## City of Philadelphia *v.* Hestonville, Mantua and Fairmount Passenger Railroad Company, Appellant.

*Street railways—Paving streets—Repairs of streets—Act of April 6, 1859.*

The act of April 6, 1859, P. L. 389, incorporating the Hestonville, Mantua & Fairmount Passenger Railroad Company provides that " The city councils may from time to time, by ordinance, establish such regulations in regard to said railway as may be required, for paving, repaving, grading, culverting of, and laying gas and water pipes in and along said streets, and to prevent obstruction thereon." *Held,* that this provision of the act does not mean that the railroad company may be required to pave, to repave, to repair or grade, or lay water or gas pipes along all the streets it traverses with its railway, but that it shall not obstruct the city in the prosecution of municipal improvements upon the city streets.

Where a street railway company is required by its charter to keep the streets in " perpetual good repair" at its own expense, it must keep in repair the pavement, whatever its style may be, which the city has placed, or has caused to be placed, upon the particular street upon which repairs are necessary; but it is under no obligation to replace a pavement with a new, and improved and more expensive style of pavement whenever the city shall so direct.

Argued April 10, 1896. Appeal, No. 68, Jan. T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1893, No. 77, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Reversed.

Assumpsit to recover the cost of repaving and repairing streets. Before ARNOLD, J.

At the trial it appeared that the plaintiff claimed to recover from the defendant moneys expended for repaving and repairing certain sections of the following streets in the city of Philadelphia, viz: Dock, Walnut, Arch, Race, Vine, Twenty-second, Twenty-fifth, Hamilton and Spring Garden, and Lancaster avenue, on and over which defendant operated its railway.

The defendant company was incorporated under the act of April 6, 1859, P. L. 389, and was authorized to lay its tracks upon certain streets, and also over the bridge at Fairmount. The act contained the following provisions:

" That before the said company shall use and occupy said

bridge, the consent of the councils of the city of Philadelphia shall be first obtained; and said councils may from time to time, by ordinance, establish such regulations in regard to said railway, as may be required for paving, re-paving, grading, culverting of and laying gas and water pipes in and along said streets, and to prevent obstruction thereon.

"Section 9. That said company, in constructing said road, shall conform to the grades now established or hereafter to be by law established, of the several streets traversed by said road, and keep said streets in perpetual good repair, at the proper expense of said company."

The court charged in part as follows :

[The charter of the railway company provides that "the city councils may from time to time by ordinance establish such regulations in regard to said railway as may be required for paving, repaving, grading, culverting of and laying gas and water pipes in and along said streets and to prevent obstruction thereon."

It has been decided by the Supreme Court on a similar charter that this subjects the railway company to the provisions of the ordinances of the city of Philadelphia which make it obligatory on passenger railway companies to repair and repave city streets when the city officials deem it necessary to be done. There is no use of elaborating this point, for it is settled, as I believe, by the decision of the Supreme Court, and therefore I shall charge you that this company is subject to the ordinance of councils requiring it not only to repair the streets when notified, but to repave them.] [1]

Defendant's points and answers were among others as follows:

1. The charter of the defendant provides: "Councils may from time to time by ordinance establish such regulations in regard to said railway as may be required for paving, repaving, grading, culverting of and laying gas and water pipes in and along said streets and to prevent obstruction thereon. Said company in constructing said road shall conform to the grade now established, or hereafter to be by law established, of the several streets traversed by said road and keep said streets in perpetual good repair at the proper expense of said company." Under these provisions of its charter the defendant is not liable for the expense of repaving any of the streets traversed by its

railway line, and the plaintiff is entitled to recover in this action such a sum only as it shall prove to have been necessarily expended to keep said streets in good order and repair.

2. Since the charter of the defendant does not render it subject to the ordinance of July 7, 1857, or any of its supplements, it follows that the defendant is not subject to the provisions of these ordinances relating to the repaving of streets.

3. Since the charter of the defendant does not impose upon it any duty to repave streets, but only to keep them in repair, it is beyond the power of the city to impose the obligation to repave by ordinance, and therefore the defendant is not subject to any of the provisions of the ordinances cited by the city except such as relate to the repair of streets.

*Answer:* These points are refused, because section 8 of defendant's charter (act of April 6, 1859, P. L. 389) provides that the city councils may from time to time establish such regulations in regard to said railway as may be required for paving, repaving and grading the streets occupied by the railway, and councils had by ordinance of July 7, 1857, provided that all railroad companies shall be at the entire cost and expense of paving, repairing and repaving that may be necessary on any street occupied by them. This was substantially repeated by the ordinance of April 1, 1859, and in case of neglect by the company the city would do the repairing or repaving at the cost of the company. [2, 3, 4, 5]

4. The plaintiff is not entitled to recover the sums expended by it upon any of the streets traversed by the defendant's railway line, unless it can prove: First, that such streets were out of repair; second, that it gave the defendant ten days' notice to repair the same; third, that the money which it now seeks to recover was expended for the necessary repair of said streets, and not for repaving them with a new or different kind of pavement. *Answer:* This point is refused, because it contains a statement that the company is not liable for the cost of repaving. [6]

Verdict and judgment for plaintiff for $58,537.37. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*Russell Duane,* with him *J. Bayard Henry,* for appellant.—
With respect to the obligation of repaving streets, the charters
granted by the legislature to the different passenger railway
companies of Philadelphia vary greatly in their provisions.
Hence it is impossible for the courts to lay down any uniform
rule for their interpretation, but on the contrary, this circum-
stance renders necessary a separate interpretation of each char-
ter for the purpose of determining the liability of each company
respectively : Act of March 16, 1865, P. L. 394 ; Ordinance of
Phila. of July 7, 1857 ; Phila. v. Ridge Ave. Pass. Ry., 143 Pa.
444 ; Phila. v. Thirteenth & Fifteenth Streets Pass. Ry., 169
Pa. 269 ; Act of September 8, 1873, Pamphlet Laws of 1874,
page 434 ; Act of April 28, 1857, Pamphlet Laws of 1858, page
556 ; Act of May 27, 1863, P. L. 586.

In the present case the question whether the appellant is sub-
ject to a liability to repave streets must be determined exclu-
sively from the terms of its charter, since it has not been proved
that the appellant ever entered into any agreement with the
city to observe ordinances requiring such repaving.  Further,
since the appellant's charter does not render it subject to the
ordinance of July 7, 1857, or any other ordinance of the city of
Philadelphia which requires the repaving of streets, it follows
that the general ordinances of the city upon this subject are not
binding upon this company : Act of April 15, 1858, P. L. 300 ;
The Coast Line R. R. v. Savannah, 30 Fed. Rep. 646 ; City of
Kansas v. Corrigan Consolidated St. Ry., 85 Mo. 263 ; Cooley
on Constitutional Limitations, chap. XVI. ; Chicago v. Sheldon,
9 Wall. 50 ; Harrisburg v. Harrisburg Pass. Ry., 1 Pearson, 298.

The charter of the Hestonville, Mantua & Fairmount Pas-
senger Railroad Company requires it to keep in good repair the
streets traversed by it, but does not impose upon this company
any obligation to repave streets ; hence no such obligation to
repave exists, and the city of Philadelphia is not entitled to
recover from this company the cost of any such repaving, pre-
viously done by the city, in the exercise of its municipal author-
ity : Western Paving & Supply Co. v. Citizens Street Ry. Co.,
128 Ind. 525 ; Norristown v. Norristown Pass. Ry., 148 Pa. 87 ;
Hammett v. Phila., 65 Pa. 146.

The common law liability of a street railway company is
limited to keeping in repair the space actually occupied by its

track : Booth on Street Ry. Law, sec. 241 ; Wistar v. Phila., 80 Pa. 505.

*E. Spencer Miller* and *James Alcorn*, assistant city solicitors, and *John L. Kinsey*, city solicitor, for appellee, cited, Phila. v. Thirteenth & Fifteenth Sts. Pass. Ry., 169 Pa. 269 ; Phila. v. Ridge Ave. Pass. Ry., 143 Pa. 444.

OPINION BY MR. JUSTICE WILLIAMS, October 5, 1896 :

The defendant company was incorporated by a special act of assembly approved on the 6th day of April, 1859. There was at that time no system of general laws regulating the creation and defining the duties and obligations of such corporations. We must look therefore to the legislative action by which the new corporation was created for a statement of its powers and privileges, and for the extent to which it was subjected to municipal burdens in excess of those that fall upon all taxpayers alike. Turning to this act we find that the company was required to obtain the consent of councils to the use of the bridge on Bridge street, which was in the line of its prospective railway ; to conform to the established grade of the streets it should occupy ; to keep the said streets in " perpetual good repair " at its own expense ; and to be subject to such ordinances as councils might from time to time adopt for the establishment of regulations " in regard to paving, repaving, grading, culverting of, and laying gas and water pipes in and along said streets, and to prevent obstructions thereon." It was not subjected to existing ordinances regulating the terms upon which the street railways were permitted to occupy the streets of the city, but the legislature laid out its route, named the streets to be occupied, and by virtue of its paramount authority gave to its creature permission to enter upon these streets and construct its line of railway upon terms named by it in the act of incorporation. The city seeks to recover for the cost of repaving portions of certain streets which the defendant was required to keep in good repair. The defendant denies its liability for new paving, while admitting its obligation to repair. The question thus raised depends upon the proper construction of the act of 1859 creating and defining the powers and duties of the defendant company. We are referred by the city in sup-

port of its position to that clause of the act subjecting the company to such regulations as might be made by city councils in regard to paving, repaving, grading, culverting and laying gas and water pipes in the streets over which the tracks of the company might extend as affording the authority for charging the cost of repairing to the defendant. But this provision does not mean that the railway company may be required to pave, to repave, or grade, or lay water or gas pipe along all the streets it traverses with its railway, but that it shall not get in the way of the city, and obstruct it in the prosecution of municipal improvements upon the city streets. It requires the railway company to conform to all regulations made by the city council having for their object the protection and facilitation of the work of the city in improving its streets, extending its system of water supply, or improving its system of drainage. When in any such direction the control of the city over its streets conflicts with the exercise of the franchise of the railway company on and over the same streets the latter must give way. The superior right of the city over its streets, as between it and any person or corporation doing business upon them, is thus recognized, and the corporation created by the act is by express words made subject to it: This precaution may not have been necessary, but it was wise. In 1859 the relations of the municipality and the street railway were not as well settled as they now are, and without this provision there was at least room for controversy over the right of the city to interrupt the exercise of a corporate franchise in its streets without liability to a claim for compensation.

This provision removes all doubt; the street railway, like the drayman, occupies the street subject to municipal control so far as this may become necessary for the public safety, or the prosecution of municipal improvements. The other ground on which a recovery is sought is that the railway was required by the law incorporating it to keep the streets occupied by it in good repair; the phrase to keep the streets in good repair, means to uphold, to maintain or preserve them in good condition; it presupposes that they are in some fair degree of repair when the obligation to keep them so begins to operate. In this connection it should be noted that the requirement is not that the defendant shall put the streets in good repair but that it

shall "keep them" in good repair. Whatever the style of paving might be at the time, the mode of repair must conform to it, and under the recent case of Phila. v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444, it may be said that when the city repaves a street with a new and improved pavement the duty to repair relates to the pavement so put in place and requires that the repairs shall be adapted to the style of pavement which the city has placed, or caused to be placed, upon the particular street upon which repairs are necessary. The duty to repair is a continuous one: It is for all time. It is not intended to perpetuate in each street of the city the style of pavement in use upon it when the railway company entered upon it with its tracks: On the contrary the general supervisory control of the city over its streets is recognized, and its right to make such regulations in regard to paving, repaving, grading, culverting, and laying gas and water pipes along them, as may be desirable to facilitate its work, and to require obedience thereto by passenger railway companies as well as the cartman and footman, is clearly written into the charter of this company. The right of the city is to determine what pavement shall be used, and when it shall go down upon a given street; the duty to repair is upon the company wherever its tracks extend. A covenant to repair in a lease makes it the duty of the lessee to keep the buildings to which it relates in substantial repair, having regard to their age and condition at the time the covenant became operative.

It may sometimes require the restoration of an inclosure or other structure taken down or removed by the maker of the covenant, but in every case it refers to a previously existing condition, the restoration or preservation of which is the purpose of the covenant. This was substantially said as early as McClenahan v. Curwin, 3 Yeates, 362. It is the doctrine of all our cases. What is now asserted is that the duty to repair includes the duty to replace with a new, an improved and more expensive style of pavement whenever the city shall so direct, and Phila. v. Ridge Ave. Ry. Co., 143 Pa. 444, and Phila. v. Thirteenth & Fifteenth Streets Ry. Co., 169 Pa. 269, are cited in support of this proposition. In neither of these cases was the question involved. In the latter case the company was subject to the ordinance of 1857 which expressly required it "to be at the cost and expense of maintaining, paving and repairing," the streets

occupied by it. The same is true of the former, or Ridge Ave. Case; The Girard College Pass. Ry. Co. was by the act of April 15, 1858, made subject to the ordinance of 1857. It was merged into the Ridge Ave. Co. and this provision became a part of the law of the consolidated company, and was held to be binding upon it. The question was presented in Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87, and decided in favor of the position of the appellant, by the affirmance of the judgment appealed from, in a short per curiam. The error of the learned judge of the court below in this case was in holding that the duty to repair was imposed by the provision in the defendants' charter that recognized the right of the city to establish regulations in regard to paving, repaving, grading, culverting, and laying gas and water pipe in the streets. In so doing he followed what he believed to be the fair effect of the Ridge Ave. and Thirteenth & Fifteenth Streets cases above referred to, but in this he was mistaken. The first assignment of error is sustained. For the same reason the answer made to the first, second and third points of the defendant was erroneous. The law of this case is fairly stated in defendant's fourth point. The extent of the liability of the defendant under its charter of incorporation is for the cost of repairs, properly made, to such style of pavement as may have been upon the several streets along which its railways ran when the notice to repair was given. The duty to repave was not imposed by the act of 1859. The judgment is reversed and a venire facias de novo awarded.