BALES, ADMX., *v.* BOARD OF COUNTY COMMISSIONERS OF CUYAHOGA COUNTY ET AL.

(Decided April 16, 1928.)

*Mr. James L. Lind,* for plaintiff in error.
*Mr. E. C. Stanton* and *Mr. Donald Kennedy,* for defendants in error.

SULLIVAN, P. J. This is a proceeding in error from the court of common pleas of Cuyahoga county, wherein an objection was made to any evidence under the petition on the ground that the allegations thereof were not sufficient to constitute a cause of action, and thereupon judgment was rendered in favor of the defendants, the Board of County Commissioners et al. Upon hearing of a motion for a new trial the same was refused.

The issue involves the construction of Section 2408 of the General Code of Ohio, which reads:

"The Board of County Commissioners may * * * be sued * * * in any court of judicature, * * * and defend all suits in law or in equity, involving an injury to any public, state or county road, * * * established by such board in its county. * * * The board shall be liable in its official capacity for damages received by reason of its negligence or carelessness in not keeping any such road or bridge in proper repair * * *."

The allegations of the petition are as follows:

"The plaintiff further says that all times herein mentioned, the defendants, the Board of County Commissioners of Cuyahoga County and M. Benjamin, were engaged in putting in a culvert extension on Wallings Road near Brecksville; that the said Wallings Road is a duly dedicated public county road; that on or about the 3rd of June, 1923, at about 5:00 o'clock p. m., while this plaintiff's decedent was a passenger in an automobile being driven along said roadway, the defendants so carelessly, negligently and recklessly permitted large piles of crushed stone and sand to be upon said roadway, that the automobile in which this plaintiff's decedent was a passenger struck one of these piles of sand and was turned over, throwing this plaintiff's decedent under the overturned automobile, severely and seriously injuring him, from which said injuries thereafter, on the 5th day of June, 1923, the said Roy R. Bales died.

"The plaintiff further says that the defendants were careless, reckless, and negligent in the following particulars, to wit:

"First: In that they permitted these large piles of sand and crushed stone to be upon said roadway

when they knew, or in the exercise of ordinary care might have known, that divers persons would be using said highway.

"Second: In that knowing, or being in a position where in the exercise of ordinary care, they should have known, the dangerous condition of said roadway for traffic, they failed to bar traffic from the use of said roadway.

"Third: In that in doing said work, they failed to so place the piles of sand and crushed stone as not to block the roadway and endanger the life and limb and property of people lawfully using said highway.

"Fourth: In that in permitting said piles of sand and crushed stone to be upon said roadway, they failed to erect suitable barriers to protect the public then and there permitted to use said roadway.

"The plaintiff says that the death of the said decedent was proximately and directly caused by the negligent, careless, and reckless acts of the defendants as hereinbefore alleged."

Thus it will be seen that there is no allegation in the petition that there was a defect in the bridge or road, or that the board was not keeping such road or bridge in proper repair, except as the acts alleged above set forth constitute a failure on the part of the board to keep the road in proper repair. Therefore the question is whether the allegations of the petition are sufficient to charge a violation of the statute by a recitation of such facts as compose the allegations of the petition. Irrespective of the law of the case, to be later discussed, it is our judgment that the facts recited in the petition have the same sufficiency in law as if, in addi-

tion to the averments made, there was an independent allegation that the board failed in keeping the road in proper repair. There is ample authority, we think, for this conclusion.

Therefore we come to the question whether the permitting by the board of an obstacle or obstruction to remain in the highway, as outlined in the petition, is in law the basis of liability for negligence against the board, where, as in the instant case, the proximate cause of the death was the obstruction in the highway.

It is contended that negligence and damages by reason thereof arise only by reason of failure to keep the road in repair. This means that the road must be out of repair—either by way of defect in the original construction, or through some condition which impairs the safety and efficiency of the road to the extent that it is out of repair. Argument is made by able counsel for the board that the remedy is in the Legislature, and that Section 2408 of the General Code is insufficient of itself to meet a state of facts such as is set forth in the petition, and it is asserted, that, inasmuch as there is no allegation in the petition that the road was out of repair, there is a failure to state a cause of action, because this section of the General Code does not include liability on the part of the board for any negligence arising from obstacles or obstructions on the highway, but only for such as arises from failure to keep the road in repair.

It is equally contended by learned counsel for plaintiff in error that permitting material to lie on the highway as an obstruction to the safety of travelers is in law within the intent and purpose of the

Legislature when it passed the statute above quoted. There can be no question that the Legislature intended, in the passage of the statute, to compel the board to keep the highways of the state in repair. The reason for this purpose is obviously the safety of the traveling public, and it is contended that material dumped upon the highway is just as dangerous to public travel as any defect arising intrinsically from the construction of the road, or from its condition subsequent to construction by reason of the use thereof by the public, or from any other incidental cause that puts the highway out of repair.

It is commonly understood that the word "repair" means to restore or to mend after decay or partial destruction, so that when repaired it is in a sound state for the purposes for which it was constructed, to wit, the safety of the public who use the highway.

Attention is directed to the language of the statute. It is impossible to reach its purpose and its meaning by taking any one word, such as "keeping" or "repair." The language which must be construed is "keeping in proper repair." That is the phrase of the statute, in substance, and it must be interpreted in the light of the intent of the Legislature, and the purpose for which the act was passed. It is plain that the responsibility of the board under the act did not end with the construction of the road, but the act imposed upon it the legal responsibility of keeping the same in proper repair, and this is for no other reason than for the safety of persons and property in lawful use of the highway.

So we turn to 4 Words and Phrases, First Series, page 3920, and we find the following authority:

"To 'keep the streets in good repair,' as used in a charter of a street railway requiring it to keep the streets, occupied by it in good repair, means to uphold, to maintain, or preserve them in good condition. It presupposes that they are in some fair degree of repair when the obligation to keep them so begins to operate. *City of Philadelphia* v. *Hestonville, M. & F. P. R. Co.*, 35 Atl. 718, 719, 177 Pa. 371."

Thus it will be noted that the above authority translates the phrase in question as meaning to uphold, to maintain, or to preserve in good condition. This interpretation is in consonance with the intent and purpose of the Legislature in the passage of the act—that the road is to be maintained and preserved in such a condition that it is safe for public travel.

Along the same line we quote from the same source the following:

"To 'keep the street in repair,' as used in a contract requiring a street railway company to keep the street in repair, means 'to have it in such state that the ordinary and expected travel of the locality may pass with reasonable ease and safety.' *McMahon* v. *Second Ave. Ry. Co.*, 75 N. Y., 231, 236."

Thus it will be seen that in this authority the words "reasonable safety" are used as an interpretation of the phrase "keeping in proper repair," and the language of these authorities is identical in substance with the language of the statute which makes the board liable by reason of negligence in not keeping the county roads or bridges in proper repair.

There are two decisions of the Appellate Court of the First District of Ohio that are in line with

the authorities above quoted. One is *Bd. of Commrs. of Clermont County* v. *Judd,* affirmed without opinion in 88 Ohio St., 601, 105 N. E., 767, and the court in that case held that there was a liability against the board on behalf of one driving a horse and buggy and running into a pile of screening or crushed stone which formed an obstruction in the roadway at a time when the county commissioners were repairing the road.

It is argued by counsel for plaintiff in error that because in that case the county commissioners were making repairs it is distinguished from the instant case, but when that case is examined it will be noted that the proximate cause of the injury for which there was a recovery was not because the road was out of repair, but because of the crushed stone and screening that were piled upon the highway, against which the party injured came in contact. So, when we relieve that case of the question of repair, we find it in character substantially the same as the case at bar, and when the Supreme Court affirmed the same without opinion there is but one significance, and that is, that the judgment of the First District was the law in Ohio at that time.

The other case is *Whitney* v. *Niehaus,* 4 Ohio App., 208, where the motion to certify was overruled by the Supreme Court. Gorman, J., a very able judge, wrote the opinion in the *Whitney case, supra.* He analyzes the question under discussion in such a manner that there is only one construction from it, and that is that the statute in question may create a liability even though the proximate cause of the injury is not always a constituent part

of the roadway itself. The language we refer to is on page 214 of the opinion, and is as follows:

"It is true that our courts have held in several cases that the board of commissioners are not liable for injuries to persons or property caused by defects in the county or public roads outside of the improved or traveled way; but in the case at bar it is averred that this ditch or drain was dug along the side of the county road, within its limits and at a point where the Whitney road intersects it, and across the face of the said Whitney road. Now the public traveling along the Whitney road had a right to enter this county road at the terminus of the township road, and if a ditch or pitfall was constructed across the terminus of this township road at the place where it intersects the county road, it would appear to be in a portion of the traveled way of this Lawrenceburg and Harrison road; it was apparently on that portion of the traveled way of said road which had to be passed over by those who entered or passed off the Whitney road; it was not at a place where no one would ordinarily have occasion to drive off to the side of the road, and therefore we believe that the amended petition in this regard shows that the defect was in the traveled way of this road."

It is to be noted, on page 215 of the *Whitney case, supra,* that Gorman, J., distinctly calls attention to the case of *Bd. of Commrs. of Clermont County* v. *Judd, supra,* in the following language, which clinches the judgment of the court as to the law being that under the statute a road may be out of repair because of an obstruction as well as of some

inherent defect caused by construction, use, or otherwise. We quote:

"It was held by this court in the case of *Commissioners of Clermont Co.* v. *Judd,* on error to the common pleas court of Clermont county, that the board of county commissioners are liable in their official capacity for damages resulting from their negligence in failing to keep a county road in proper and sufficient condition for reasonably safe use by the public, and if obstructions are carelessly or negligently placed thereon, either by the county commissioners, their agents or employes, thereby blocking or obstructing the traveled portion thereof, it would be a failure to perform their duty to keep the road in repair, and would render the county commissioners liable for the injurious consequences resulting from such failure of duty. In that case the commissioners of Clermont county were repairing a portion of the Ohio Turnpike and for that purpose had deposited along the traveled portion of said road a pile of screenings which caused an obstruction in the road and into which the plaintiff, Mabel Judd, ran while driving a horse and buggy along the road in the night time, there being no barriers, lights or safeguards to warn her of the obstruction. She recovered for injuries sustained by this accident, and the judgment was affirmed by this court and by the Supreme Court, without opinion, 88 Ohio St., 601 [105 N. E., 767]. Unfortunately the opinion of the court of appeals of Clermont county was not published, but it is agreed by counsel in this case, and was likewise admitted by counsel in the *Judd case,* that a portion of this opinion is correctly set out in the brief of counsel for Mabel Judd in case No. 13935,

Supreme Court of Ohio, a copy of which has been submitted to us by counsel in the case at bar. We are unable to see any distinction between an obstruction consisting of a pile of screenings in the roadway and a ditch or trench dug in a part of the traveled way, and believe that the rule laid down in the *Judd case* is decisive of the point raised by counsel for the commissioners in this case, as to the **rule of** *respondeat superior*. Furthermore, it is a sound rule of law that where the work done is inherently dangerous, as it is alleged in this case it was, the owner can not relieve himself from liability by committing the work to an independent contractor. See *Cov. & Cin. Bridge Co.* v. *Steinbrock & Patrick,* 61 Ohio St., 215 [55 N. E., 618, 76 Am. St. Rep., 375].

"The court is of the opinion that the ruling of the common pleas court in sustaining the demurrer to the amended petition was erroneous, and the judgment dismissing the defendants, the board of county commissioners of Hamilton county, is prejudicial to the plaintiff in error, and said judgment is hereby reversed."

It is argued that *Weiher* v. *Phillips,* 103 Ohio St., 249, 133 N. E., 67, settles the law in Ohio that the statute does not reach obstacles or obstructions upon the highway, where the basis of the action is to impose liability because of negligence to keep the road in repair. From a reading of the syllabus in that case it is apparent that the only issue triable there was whether the statute made county commissioners liable on a road that was under the exclusive power and control of the state highway department, and the court held that, inasmuch as no duty is enjoined upon the board of county commissioners to maintain

and repair such a road, the board would not be chargeable with carelessness and negligence in not having such highway in proper repair. It is true that the first paragraph of the syllabus holds that the liability of the board of county commissioners shall not be extended beyond the clear import of the terms of the statute, inasmuch as there was no liability against the county commissioners at common law, and it is also true that on page 256 of the opinion (133 N. E., 69), Marshall, C. J., by way of *obiter,* raised a question that is not made part of the law of the case by the syllabus, when he said in substance that from an analysis of the petition it is disclosed that the accident was not primarily due to the defective condition of the road, for the automobile did not run into a defect due either to original construction or failure to keep in proper repair; although the learned judge further states that it is true that the road itself was not in proper repair and was being repaired by the state authorities whose duty it was to make such repairs.

If these expressions from this able jurist had been an issue in the case, and incorporated as part of the law of the case in the syllabus, we would be bound to respect and follow what appears to be the unmistakable intent of the language employed in this paragraph of the opinion. The real issue in the *Weiher* v. *Phillips case* under discussion was whether the county commissioners were liable for a state highway under the exclusive care of the state highway department, under the section of the statute in question. Thus the expression of the opinion whose substance is noted is clearly *obiter dictum,* and under the authorities such an expression from

a judge of the court is not an adjudication. *Rush v. French,* 1 Ariz., 99, 25 P., 816; *In re Woodruff* (D. C.), 96 F., 317, 321. There are many other authorities, and it is unnecessary to cite them.

It is a well-understood proposition of law that a judge in the writing of an opinion in a reviewing court is not limited in his expressions solely to the issues primarily raised and discussed, but may, in passing, expose the attitude of his mind upon a status of the case which is secondary in its nature to the issues involved, which expressions have no binding force as an adjudication of the law of the case under consideration.

The question involved in the instant case was never raised or discussed. Therefore, whether the learned judge, if he were to adjudicate the proposition, would decide that a road was not out of repair if there was a dangerous obstacle and obstruction placed upon it, to the extent that it made the condition of the road dangerous to public travel, can only be conjectured from the language of the *obiter dictum.*

The Hamilton county cases, *supra,* .had been before the Supreme Court as above noted, where the identical question in the case at bar was involved, and it is the logical conclusion that when the motion to certify was overruled in the *Niehaus case, supra,* and in the *Judd case, supra,* affirmed without opinion in 88 Ohio St., 601, 105 N. E., 767, the highest tribunal in the state was aware by its judicial action in the premises that the law of the cases referred to was the law of Ohio upon the distinct issues raised in those cases, and which in substance are strikingly similar to the question at bar.

In the instant case, a dangerous obstruction was permitted to be placed upon a public highway. As a result thereof there was the loss of a human life, and we think that a reasonable construction of the statute is that the road itself was permitted to be and remain out of repair from the moment that the dangerous obstacle was placed upon it, and as a consequence of which life and property were endangered.

If there had been a depression in the road, and the death resulted therefrom, there would be no question of the road being out of repair. We cannot see how an elevation, such as a pile of crushed stone, creating the same danger as the depression, does not create the same situation, because the intent of the Legislature was to create liability for negligence in not keeping the road in repair, and it is our construction of the statute, without enlarging or changing it by judicial construction, that it was intended to meet situations like the one at bar; in other words, the creation of the obstruction put the roadway out of repair within the intent and meaning of the statute, for the reason that the highway was impassable and unfit for the safe use of travelers the moment that a dangerous obstruction was placed thereon, and during the period of time the obstruction was in the highway the same was not only out of condition, but was being permitted to be out of condition, and therefore out of repair. In legal as well as practical effect, when the pile of gravel was dumped upon the highway while it was being used by the traveling public, it became a part and parcel of the highway, and, hence, during the time it was permitted to remain on the highway, the highway itself was out of repair.

If the gravel that was dumped on the highway was of such a nature that it adhered and became attached to the body of the highway, then there could be no question possibly raised in reason that the road itself was out of repair. Can it be said that with the obstruction upon the highway unattached, as just stated, there is not equally an obstruction that creates a condition which puts the highway out of repair and prevents it from being in good condition?

Suppose, for instance, that the pile of gravel instead of having been dumped upon the highway itself had been dug out of the highway and piled in the same spot where the accident happened, and some one later, in traveling upon the highway, collided with it and lost his life! Could it be said that the road was not out of repair, even though the proximate cause of the accident was the pile of material that was taken from the road and not the depression that was left after the taking therefrom of the material?

Therefore it is our holding that there was error in sustaining the objection to the offering of any evidence under the petition on the ground that the allegations were not sufficient in law to constitute a cause of action, and, inasmuch as this ruling is in the nature of sustaining a demurrer, the lower court is hereby instructed to overrule the demurrer. For these reasons the judgment of the lower court is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

LEVINE, J., concurs.

VICKERY, J., dissenting. I feel it my duty to give expression to my views of this case.

It seems that the plaintiff in error, plaintiff below, as administratrix, brought an action against the county commissioners to recover for the death of her husband by reason of the automobile in which he was a passenger coming in contact with a pile of broken stones that was placed upon the county road within the county of Cuyahoga.

If the county commissioners are liable at all they are responsible by virtue of Section 2408, General Code, which reads as follows:

"The Board of County Commissioners may * * * be sued * * * in any court of judicature, * * * and defend all suits in law or in equity, involving an injury to any public, state or county road, * * * established by such board in its county * * *. *The board shall be liable in its official capacity for damages received by reason of its negligence or carelessness in not keeping any such road or bridge in proper repair* * * *.*"

Now it is conceded that this statute is in derogation of common law and must be strictly construed, for we must remember that, but for the statute, the county being a division of the state is not responsible except to the extent that it is made responsible by statute. That apparently was the view the court below took of this case, for on an objection to the introduction of any testimony on the ground that the petition did not state a cause of action, the objection was sustained, the petition dismissed, and judgment entered for the county commissioners. And it is to reverse that judgment that error is prosecuted here.

The petition did not allege that the county com-

missioners had failed to keep the road in repair, nor did it state that the injury *resulted from* failure to keep in repair, but alleged in other words that a pile of crushed stone had been placed upon it for the purpose of repairing a culvert, that plaintiff's decedent ran into this pile of stone, and that death resulted therefrom, so the question is whether the county commissioners, without a statute making them liable, are liable for *obstructions* that are placed *upon* the highway either by contractors, by private individuals, or by themselves.

There is nothing in this petition, and there is nothing in this record, to show that this road was not in repair. For all intents and purposes the road was a perfectly smooth road, and the culvert, which they meant to enlarge, reconstruct, or rebuild, had not been disturbed in any way: it was not out of repair within the meaning of the term as used in the dictionary and other books. The only difficulty was that the highway was obstructed by this pile of stone on it, and so the proposition narrows itself down to the single question whether the county commissioners can be made liable by adding to the liability prescribed in the statute. If this were a municipality, where the city is made liable for the safety of the streets, for defects, for obstructions, or for any nuisance which may appear upon the street, why, of course, there would be no question. If the obstruction were there long enough for the city to notice it, it would be responsible, even though it did not put it there. Not so the county. So far as we know, this pile of stones may have been placed there by a contractor who was an independent contractor, the county having nothing whatever to do with it; and

how it could be said that the road had not been kept in repair when there were no defects in it, is a little difficult to understand.

It is argued that the case of *Whitney* v. *Niehaus,* 4 Ohio App., 208, is authority for the proposition that the county commissioners are liable. Whether or not that ever was the law in the state, it is not the law now.

We think the case of *Weiher* v. *Phillips,* 103 Ohio St., 249, 133 N. E., 67, is the last pronouncement of the Supreme Court upon this question, and if the *Whitney case* ever was the law it was overruled in 103 Ohio State. The first proposition of the syllabus in that case reads:

"A board of county commissioners is not liable in its official capacity for damages for negligent discharge of its official duties except in so far as such liability is created by statute, and such liability shall not be extended beyond the clear import of the terms of the statutes."

This proposition is in accordance with all the constructions that have been placed upon statutes that are in derogation of the common law.

It is argued by the plaintiff in error that this case is only *dicta.* We do not so view it. The paragraph quoted above is from the syllabus. It is true that the highway in question was under the control of the state, and the court could have stopped there perhaps, but the county was sued and the proposition that was laid down in the first syllabus is clearly within the case.

It seems in that case that a certain highway was being improved by the state highway commission, that a contract had been let for the work, that a

brick barrier had been built across the road, and that the party was injured by trying to avoid this barrier and running into the ditch; but Chief Justice Marshall in this case used some very significant words:

"We have so far proceeded in this opinion upon the theory that the accident was due to a failure to keep this road in proper repair. A critical analysis of the allegations of the petition will disclose, however, that the accident was not primarily due to the defective condition of the road. The automobile did not run into a defect due either to improper original construction or to failure to keep the roadway in proper repair. It is true that this road, according to the allegations of the petition, was not in proper repair, but according to the same allegations the road was being repaired and by the authorities whose duty it was to make such repairs.

"The petition alleges that 'in making said repairs the road was obstructed and made impassable by a wall of bricks, 5 or 6 tiers high, which were carelessly and negligently piled, and placed across the entire width of said road at the western terminus of the paved part of the road as aforesaid, thereby forming a barrier and obstructing the use of said road for all traffic at said point,' " etc.

Now it will be seen from this quotation from the opinion of Chief Justice Marshall that a road must not only be out of repair, but the being out of repair must have been the proximate cause of the injury; that a barrier placed across the road, which was much more serious than the obstruction in the instant case, was not such a violation of the statute, although the road was out of repair in that case;

but it did not appear from the petition that that was the cause of the injury. By a parity of reasoning it must be that if a road is not out of repair, but in perfect repair, and if an obstruction is placed upon the road, there cannot be a recovery against the county commissioners in their official capacity; and the above is what the petition sets up in the instant case, and consequently I do not see under what circumstances there could be a liability in the instant case, and the court below in construing this petition found that it nowhere contained any allegation that the road was not in repair and by reason of these defects in the highway this injury was caused. So the petition did not state a cause of action, and consequently the court was right in rendering judgment as he did.

There have been cited to us cases in West Virginia and Pennsylvania which would seem to imply that keeping in repair means the removal of obstructions, or keeping them off the street, but on an examination of the authorities in those states, one will find that in these cases the city had by ordinance authorized the occupation of its streets, provided they were kept in repair by the railroad, and this would raise a different situation than in the instant case, and the liability would be different.

Feeling as I do about this case, I cannot help but come to the conclusion that the court below was right, and, so far as I am concerned, the judgment should be affirmed.