## ROBINSON v SWING et

Ohio Appeals, 1st Dist, Hamilton Co

No 5904.  Decided May 26, 1939

John  M.  Renner,  Cincinnati,  and
Maurice W. Jacobs, Cincinnati, for ap-
pellee.
Carl  W.  Rich,  Cincinnati;  Walter  M.
Locke,  Cincinnati,  and  I.  Jack  Martin,
Cincinnati,  for  appellants.

## OPINION

By ROSS, J.

Appeal  on  questions  of  law  from  a
judgment  of  the  Court  of  Common
Pleas of Hamilton County, entered upon
a  verdict  in  favor  of  the  plaintiff.

The  action  was  initiated  to  recover
compensation  for  damages  to  the  plain-
tiff  who  was  a  passenger  in  an  auto-
mobile.  This  vehicle  was  being  driven

over a road in an alleged subdivision known as College Hill Gardens, which is located within three miles from the boundaries of the City of Cincinnati.

The surface of this so-called road for some 150 feet south of Van Zandt Road is concrete, the next five hundred feet is macadam, and thereafter, the surface for several hundred feet is cinders.

The automobile in which the plaintiff was a passenger was driven from Van Zandt Road southwardly over the concrete, macadam, and for some distance over the cinders, when it went into a depression caused by a ditch extending entirely across the cinder road. The plaintiff was injured when the automobile went into the depression. This occurred at 7:45 P. M., June 28th, 1933.

The defendants in this action are the County Commissioners of Hamilton County. The plaintiff may not succeed against them unless the area in which the injuries were received was by statute law placed under their jurisdiction and control and liability for negligence, that is, tort liability of the county so definitely established.

The so-called road is a platted street in the subdivision mentioned. This plat was presented to the Planning Commission of the City of Cincinnati and approved by that body. It was then filed with the Recorder of Hamilton County.

It is the claim of the plaintiff that these facts are sufficient to establish tort liability in the county of Hamilton.

There is no evidence in the record indicating that the County Commissioners of the county of Hamilton ever had any actual knowledge of the existence of the so-called road, for failing to keep which in repair the county is to be held liable.

It is true that the plat was filed with an officer of the county—its County Recorder—but is this notice to the County Commissioners?

It is also true that sufficient time elapsed from the filing of the plat (if responsibility then attached) August 14, 1930, until the time of the mishap, June 28, 1933, to establish constructive notice in the county.

The first question presented is really simple. Do the statutes of the state of Ohio attach tort liability upon the county for negligence in failing to "repair" the so-called road in question? If there is no such statutory liability, there is no tort liability, for the injuries of which complaint is made in this action. In **Board of County Commissioners v Darst, 96 Oh St 163 at page 166**, the court states:

"The following legal principles have been established by the decisions of this court: That the board of county commissioners are not liable at common law in their quasi-corporate capacity for damages resulting from negligence in the performance of their official duties; that in order to impose such liability for failure to perform official functions of this character, the state, by legislative enactment, must fix the terms and the measure of liability for official delinquencies, and, further, that statutes imposing such liability, being in derogation of the common law, are not to be extended beyond the plain meaning of their terms. **Commissioners of Hamilton County v Mighels, 7 Oh St 110; Commissioners of Morgan County v The Marietta Transfer & Storage Co., 75 Oh St 244, and Ebert v Commissioners of Pickaway County, 75 Oh St 474.**

In the interpretation of a statute seeking to impose a liability against the board, where it is sought to abrogate or modify the common law rule, the statutory terms must clearly import such intention, and, if doubtful or ambiguous, should be resolved against its imposition."

It is the claim of the plaintiff that, by virtue of the statute law of Ohio, an actual fee simple title to the so-called road in question was vested in the county of Hamilton, and that the county became immediately liable to keep such road in repair. If this position is correct, it obviously places upon the county commissioners an onerous burden, and, certainly, any statute so providing should receive a strict construction requiring that such liability

be definitely and unequivocally imposed with language leaving no possible doubt as to its clear meaning.

It is stated in the brief of appellee that:

"The subdividers of College Hill Gardens employed a statutory method which did not require the formal approval, acceptance, acquiesence or consent of the Board of County Commissioners. By virtue of this procedure Bobolink Avenue became a County Road absolutely independently of any act of the Board of County Commissioners.

"There is no doubt that the procedure used in dedicating Bobolink Avenue was not to the liking of the Board of County Commissioners and its counsel. Perhaps too, it is not the most popular and frequently used method of dedicating road to the County, but nevertheless it is a valid and clearly and well defined statutory proceeding. (§§3580 to 3592 inclusive and 6906-1 GC which are fully discussed hereinafter.)

The plaintiff relies upon §§3580 to 3592 GC, to sustain his position.

Sec. 3580 GC, provides for survey and platting of a subdivision.

Sec. 3583 GC, provides:

"After the plat or map is completed, it shall be certified by the surveyor, and acknowledged by the owner or owners before an officer authorized to take the acknowledgment of deeds, who shall certify his official act on the plat or map. If any owner is a non-resident of the state, his agent, authorized by writing, may make the acknowledgment. Such plat or map, and if the execution is by agent, his written authority, shall thereupon be recorded in the office of the county recorder. Provided, however, that no plat or map certifying lands outside of a municipal corporation, wherein the proprietor shall dedicate public highways, shall be entitled to be recovered without the approval thereon of the county commissioners of the county wherein such lands are situated, upon the filing of any such plat for record the approval

of the county commissioners endorsed thereon shall operate as an acceptance and confirmation of the dedication of the public highways, contained therein, except, however, that nothing herein contained shall be construed to apply to such plats or maps as are required by §3586-1 GC to be approved by a city planning commission."

It will be noted that this section requires approval by the county commissioners endorsed on the plat, except where plats are required to be approved by a city planning commission under the provisions of §3586-1 GC. The pertinent portions of this latter section are:

"* * * but when a plan has been adopted as provided in this section the approval of plats provided for herein shall be in lieu of the approvals provided for by any other section or sections of the General Code, so far as territory within the approving jurisdiction of the planning commission, as provided in this section, is concerned."

It is to be observed that this section provides, also, that when a city planning commission has been duly constituted in a city, no plat of a subdivision of land (not in a village) within three miles of the corporate limits shall be recorded until it is approved by such planning commission.

That such jurisdiction is constitutional was held in the case of **The Prudential Co-operative Realty Co. v City of Youngstown, 118 Oh St., 204.**

Now the evident intent of the concluding language of §3586-1, above quoted, as applied to the considered situation is to exclude from operation or effect upon such situation the terms of §3583 GC.

The approval provided for by the City Planning Commission is "in lieu of" the approval of the County Commissioners, provided for in §3583 GC—and it is contended that such being the case, when the approval of the City Planning Commission is secured, such approval "shall operate as an accep-

tance and confirmation of the dedication of the public highways" (§3586-1 GC) contained in the plat of the subdivision within the three mile limit.

It seems clear, therefore, reading the two sections together and applying them to the facts in this case ▮▮▮ that the approval of the Planning Commission and filing the plat for record operated "as an acceptance and confirmation of the ¡dedication of" this road.

**Sec. 3586-2 GC;** deals with the operation of a county planning commission, but territory within the three mile limit of municipal corporate limits are excluded from the operation of such §3586-2. ("other than land within a municipal corporation or land within three miles of a city as provided in §3586-1 GC").

Our attention is now directed to §3589 GC, which provides:

"Such plats or maps shall be deemed in law a sufficient conveyance to vest fee simple of all such parcels of land as are therein expressed, named, or intended for public use, in the county in which the village is situated, for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever."

This section was originally paragraph 8 of an act to provide for the recording of town plats. **29 Ohio Laws, page 350.**

The word "village" in §3589 has been substituted for the word "town" in the original act, which as the title indicates related to the laying out of a town and the dedication of the streets therein.

In order to have the application contended for by the plaintiff it is necessary to again substitute for the word "village", city having a planning commission, which has adopted a plan for streets in territory within three miles of the corporate limits (§3586-1 GC). Judicial power does not ▮▮▮ extend thus far, especially when guided by strict construction of statutes in derogation of the common law.

However, §6906-1 GC, is directly in point. The gist of this section is that the road in question is "under the control and supervision of the Board of Commissioners of the county", and that means are provided for "the maintenance of the streets in such newly platted territory until such time as such streets shall have been permanently improved".

Our attention is directed by the defendants to §6886 GC, which provides that persons may dedicate land for road purposes to the county with the approval of the county commissioners. No reference is made to the sections herein previously noted. There is nothing stated in this statute to indicate that it is exclusive or that other statutes providing for acceptance by the county of roads are rendered inoperative. This section must be read in pari materia with other sections having an equal application.

The appellants-defendants put great reliance upon the provisions of §2408 GC, which is:

"The board of county commissioners may sue and be sued, plead or be impleaded in any court of judicature, bring, maintain and defend all suits in law or in equity, involving an injury to any public, state or county road, bridge, ditch, drain or watercourse established by such board in its county, and for the prevention of injury thereto. The board shall be liable in its official capacity for damages received by reason of its negligence or carelessness in not keeping any such road or bridge in proper repair, and shall demand and receive, by suit or otherwise, any real estate or interest therein, legal or equitable, belonging to the county or any money or other property due the county. The money so recovered shall be paid into the treasury of the county, and the board shall take the treasurer's receipt therefor and file it with the county auditor."

This section of the Code appears in "Part First" of the code entitled "Political" and under Title X, entitled

"Counties" and Division II "County Officers", Section 1—"Commissioners" It by the title of the section deals with the liability of County Commissioners.

The commissioners in their official capacity are made liable for their negligence or carelessness "in ▉ not keeping any such road or bridge in proper repair." A reading of the section indicates that "such road" is any "public state or county road", "established by such board".

This is the only section of the Code imposing tort liability for negligence upon the county commissioners for failure to keep roads in repair. The other sections hereinbefore noted could only impose such liability by inference which is not justified. **Weither, etc. v Phillips et, 103 Oh St 249. Riley v McNicol et, etc., 109 Oh St 29.** At page 33 of the opinion in the latter case, the Court states:

"This court has on various occasions announced the principle that these county boards are not liable in their official capacity for negligent discharge of official duties, unless such liability is created by statute, and that such liability shall not be extended beyond the clear import of the terms of the statutes'. **Weither v Phillips, 103 Oh St 249, 133 N. E. 67.** In **Board of County Comm'rs. of Franklin County v Darst, 96 Oh St 163**, it is stated in the opinion, at page 167, 117 N. E. 166, at page 167, that the statutory terms, if doubtful or ambiguous, should be resolved against the imposition of liability upon the board for official delinquencies."

See also: **11 O. Jur. 543.**

The question now presented is, does the approval by the City Planning Commission, the recording of the plat, and that fact that these matters under §§3583 and 3586-1 GC, "operate as an acceptance and confirmation of dedication" of the road, amount to an establishing of the road as a county road under §2408 GC, and thus creating tort liability in the county commissioners for negligence in failing to repair the same?

What is meant by establishing a road as a county highway? "Establish", according to the Oxford English Dictionary means: "To fix, settle, institute, or ordain permanently—to set up on a secure basis, to render stable or firm".

The use of this term "establish" in the statute implies that some affirmative act on the part of the ▉ commissioners should intervene before liability is created. No such affirmative act on the part of the commissioners is provided for in the statutes ▉ upon which the plaintiff relies. The liability attaching therein, if it existed would be automatic, without any voluntary action upon the part of the Board. It would be imposed by law without their consent. Such liability could be imposed, if effective language were used. . None of the cases, even those decided by Nisi Prius Courts, is of assistance in determining this question. All of them have been carefully examined. On the contrary, other sections of the statutes seem to support the view that implied acceptance of a county road is not establishing it as a county road.

**Sec. 7464 GC,** provides:

"The public highways of the state shall be divided into three classes, namely: State roads, county roads and township roads.

"(a) State roads shall include the roads and highways on the state highway system.

"(b) County roads shall include all roads which have been or may be established as a part of the county system of roads as provided for under §§6965, 6966, 6967 and 6968 GC, which shall be known as the county highway system, and all such roads shall be maintained by the county commissioners.

"(c) Township roads shall include all public highways of the state other than state or county roads as hereinbefore defined, and the trustees of

each township shall maintain all such roads within their respective townships; and provided further, that the county commissioners shall have full power and authority to assist the township trustees in maintaining all such roads, but nothing herein shall prevent the township trustees from improving any road within their respective townships, except as otherwise provided in this act."

Sec. 6965 GC, provides in part:

"There shall be created in each county within the state a system of county highways, which system shall be selected and determined in the following manner, to-wit: * * *"

And the remainder of such section and §§6966 and 6967 GC, provide a definite means for establishing county highways. These sections, generally speaking, provide that the County Commissioners shall ascertain the desirability of locating county roads and that: "Such system of highways when selected and designated by the county commissioners in the manner herein prescribed shall be known as the system of county highways of said county, and all of the roads composing said system shall thereafter be known and designated as county roads." (§6966 GC). The section further provides that a map of such county roads shall be made and transmitted to the director of highways and that if he is satisfied such roads have been properly selected, shall approve the same and that: "The system of roads designated upon said map shall thereupon become the system of county roads of said county," which by reference back to §7464 GC, "shall be maintained by the county commissioners". However, it is only by virtue of §2408 GC, that the county commissioners are held liable for negligence or carelessness in not keeping any such road or bridge in proper repair. Sec. 7464 GC, in itself, would not be sufficient to impose such liability.

Sec. 6965 et seq. GC, were passed April 6th, 1923, and were, therefore, in effect on June 28, 1933, when the injuries complained of were received.

Sec. 7464 GC, as amended, was passed April 21, 1927, and was, therefore, also in effect.

The obvious purpose of these sections is entirely in accord with reason and justice in requiring that in the absence of definite legislation, a county should not be held automatically liable upon inferential acceptance of liability.

The judgment of the Court of Common Pleas is reversed and this court renders judgment for the defendants.

MATTHEWS, PJ. and HAMILTON, J., concur.