COVENT INSURANCE CO., LTD., APPELLANT, *v.* CARROLL COUNTY COMMISSIONERS, APPELLEES.

(No. 443—Decided December 29, 1981.)

*Mr. Christopher C. Pfendler* and *Mr. William A. Peterson,* for appellant.
*Mr. John C. Childers,* for appellees.

DONOFRIO, J. This is an appeal from the Court of Common Pleas of Carroll County, from a granting of defendants-appellees', Carroll County Commissioners', motion for summary judgment.

On July 31, 1979, at approximately 3:30 p.m., one Bill Bunker was driving a commercial truck west on State Route 39. The truck was owned at the time by Ruan Leasing Company, and insured by the plaintiff-appellant, Covent Insurance Company, Ltd. Bunker proceeded west on State Route 39 around a curve and observed a bridge marked thirteen feet six inches clearance. There had been no advance clearance signs. Thinking that the posted clearance was sufficient to allow safe clearance of his vehicle, Bunker continued to drive his truck toward the bridge. As the truck passed under the overhead superstructure of the bridge, the trailer struck said overhead superstructure and did considerable damage to the truck.

State Highway Patrol Trooper J. T. Lloyd measured the bridge clearance and found it to be actually twelve feet eight inches. He then measured the actual height of the truck to be thirteen feet five inches. Trooper Lloyd reported weather and road conditions to be clear and dry. Appellant paid the repair and towing charges in the amount of $5,223.37 and

filed this action as the subrogee of the insured's claim.

There seems to be no disagreement by the parties as to the operative facts in this case: (1) Carroll County had the responsibility of maintaining the bridge, (2) the county's highway department posted the incorrect clearance sign, (3) the sign was originally posted November 16, 1978 and indicated a clearance height of thirteen feet six inches, (4) no advance clearance signs were posted on the day of the accident, and (5) new signs were posted after the accident indicating a clearance of twelve feet eight inches.

The trial judge, in his findings of fact and conclusions of law, found that the appellees had erected the sign in question, maintained it and permitted it to exist.

The trial court determined this situation to be a nuisance and relied heavily on the *dicta* found in *Ditmyer* v. *Bd. of County Commrs.* (1980), 64 Ohio St. 2d 146 [18 O.O.3d 372]. The *Ditmyer* decision held that R.C. 305.12 is a statutory abrogation of sovereign immunity and did not encompass snow removal operations. The *dicta,* relied upon by the trial court in *Ditmyer,* quoted in the court's opinion, stated:

"The failure of the General Assembly to use the phrase 'free from nuisance'· or other such terminology in R.C. 305.12 clearly indicates its intention not to impose liability in matters unrelated to actual road repair activities. * * * Therefore, the county commissioners are not liable in their official capacity for matters that are considered a nuisance, but are only liable for their failure to keep the roadbed and the bridges in proper repair." *Ditmyer, supra,* at 150.

Appellant sets forth one assignment of error:

"The Carroll County Court of Common Pleas erred in holding the Defendants immune from liability when it failed to follow Ohio case law on the application of O.R.C. Section 305.12."

The issue under this assignment of error is this: may a board of county commis-sioners escape liability for the negligent posting of an incorrect clearance sign on a county-owned bridge by invoking the doctrine of sovereign immunity in light of R.C. 305.12?

R.C. 305.12 waives the doctrine of sovereign immunity for boards of county commissioners, in the following manner:

"The board of county commissioners may sue and be sued, plead and be impleaded in any court of judicature, bring, maintain, and defend all suits in law or in equity, involving an injury to any *public, state, or county road, bridge,* ditch, drain, or watercourse *established by such board in its county,* and for the prevention of injury thereto. The board shall be liable, in its official capacity, for damages received by reason of its negligence or carelessness in not keeping any *such road or bridge* in proper repair, and shall demand and receive, by suit or otherwise, any real estate or interest therein, legal or equitable, belonging to the county, or any money or other property due the county. * * *" (Emphasis added.)

Courts of this state have previously held that this statute (and its predecessor, G.C. 2408), being in derogation of the common law doctrine of sovereign immunity, must be strictly construed. *E.g., Weiher* v. *Phillips* (1921), 103 Ohio St. 249, 252; and *Robinson* v. *Swing* (1939), 70 Ohio App. 83, 91 [24 O.O. 384]. See, also, *Schaffer* v. *Bd. of Trustees* (1960), 171 Ohio St. 228 [12 O.O.2d 343].

R.C. 4511.11 provides, in part, as follows:

"(A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, * * *.

"* * *

"(D) All traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications."

The Department of Transportation Regulation No. 2N-15, low clearance signs, in pertinent parts, states:

"The Low Clearance (W-42) sign, indicating low overhead clearance and showing the exact amount of clearance at low bridges, underpasses, and other overhead structures, shall be used at all points where clearance is less than 13 feet, 6 inches. The actual clearance shall be shown on the sign to the nearest inch. The sign should be erected between 400 feet and 750 feet in advance of the entrance to the structure.

"* * *

"Clearances should ·be checked periodically, particularly in areas where resurfacing operations have taken place."

41 Ohio Jurisprudence 2d 105, Nuisances, Section 12, states, "* * * nuisance and negligence are distinct torts. * * * However, despite the distinct nature of the torts of nuisance and negligence, they may be and frequently are, coexisting and practically inseparable, as where acts or omissions constituting negligence also give rise to a nuisance; * * *."

The appellant contends that the posting of an incorrect clearance sign was a failure by the Carroll County Commissioners to exercise reasonable care in carrying out a duty that is required of them by R.C. 4511.11 and Regulation No. 2N-15 of the Department of Transportation which R.C. 4511.11 incorporates, and is therefore negligence, not nuisance. We agree.

We now come to the question of whether or not the board of county commissioners is liable under the fact situation herein by virtue of R.C. 305.12. Liability for the operation of roads and bridges is one of the areas in which the sovereign immunity of the county has been held to have been abrogated by this section.

At the time of rendering its decision, the trial court did not have the benefit of the recent Ohio Supreme Court case, *Starcher* v. *Logsdon* (1981), 66 Ohio St. 2d 57 [20 O.O.3d 45]. Paragraph two of the syllabus cites a general proposition of law regarding the liability of the county commissioners as follows:

"In order to effect a just and reasonable result, R.C. 305.12 must be construed as imposing liability upon a board of county commissioners for its negligence, whenever such board has assumed, or has been conferred by statute with, primary responsibility for keeping in proper repair roads or bridges, or both, in its county."

The language of the court that resolves the pivotal question herein is found in footnote 7, which states:

"The contention of appellees (apparently adopted by the trial court) that there is a distinction between failure to warn of a hazard in a road and failure to keep a road in proper repair under R.C. 305.12 is without merit in this context. Where a board of county commissioners has a duty to maintain and repair a road or bridge, the active creation of a hazardous condition, without properly informing the traveling public, is surely a more pernicious act than the passive allowance of a state of disrepair to develop." *Starcher, supra,* at 62.

In *Starcher* the county had undertaken to repair a bridge and in doing so removed the bridge and did not adequately warn of the hazard caused by the bridge removal and failed to barricade the roadway. Although *Starcher* determined other matters dealing with statutory construction of other statutes, it did address itself to the issue we face herein.

We, therefore, find that the fact situation herein falls within R.C. 305.12 which abrogates the immunity that the county ordinarily enjoys.

"The statute in question has also been applied to obstructions intentionally placed on a highway for the actual repair of roads or bridges. *Pancake* v. *Wakefield* (1956), 102 Ohio App. 5 [1 O.O.2d 473] (crushed stone piles on highway); *Bales* v.

*Bd. of County Commrs.* (1928), 30 Ohio App. 249 (crushed stone piles on highway); *Brownfield* v. *Clapham* (1916), 27 C.D. 424 (wire barricade stretched across road)." *Ditmyer, supra,* at 149.

Although appellees argue that the fact situation of improper posting of bridge height extends beyond the import of the statute and does not fit the definition of the word "repair," the Court of Appeals for Cuyahoga County, in keeping with a strict interpretation of R.C. 305.12, stated in *Bales, supra,* its analysis of the words "keeping in proper repair" and established what facts must be present to abrogate a county's sovereign immunity under R.C. 305.12. The facts of the *Bales* case dealt with an accident which was the result of sand and crushed rock which the county negligently left on a county road which otherwise was structurally sound.

On page 253 of that opinion, the court began construing the ambiguous words in the statute by saying, "* * * It is impossible to reach its purpose and its meaning by taking any one word, such as 'keeping' or 'repair.' The language which must be construed is 'keeping in proper repair.' "

The *Bales* court then looked to the intent of the legislature and the purpose for which the statute was written and stated: "* * * It is plain that the responsibility of the board under the act did not end with the construction of the road, but the act imposed upon it the legal responsibility of keeping the same in proper repair, and this is for no other reason than for the safety of persons and property in lawful use of the highway." *Bales, supra,* at 253.

The court then turned to Words and Phrases and began to construct its definition of the phrase "keeping in proper repair," commenting on that source: "* * * This interpretation is in consonance with the intent and purpose of the Legislature in the passage of the act — that the road is to be maintained and preserved in such a condition that it is safe for public travel.

"* * *

"* * * To 'keep the street in repair,' * * * means 'to have it in such state that the ordinary and expected travel of the locality may pass with reasonable ease and safety.' " *Bales, supra,* at 254.

The *Bales* court then, on page 261 of that opinion, fit this broader definition of the phrase in question to the facts of the case before it:

"* * * the intent of the Legislature was to create liability for negligence in not keeping the road in repair, and it is our construction of the statute, without enlarging or changing it by judicial construction, that it was intended to meet situations like the one at bar; in other words, the creation of the obstruction put the roadway out of repair within the intent and meaning of the statute, for the reason that the highway was impassable and unfit for the safe use of travelers the moment that a dangerous obstruction was placed thereon, and during the period of time the obstruction was in the highway the same was not only out of condition, but was being permitted to be out of condition, and therefore out of repair. In legal as well as practical effect, when the pile of gravel was dumped upon the highway while it was being used by the traveling public, it became a part and parcel of the highway, and, hence, during the time it was permitted to remain on the highway, the highway itself was out of repair."

The *Bales* court was presented with a factual situation where the roadway was structurally sound, and "in good repair," but they refused to ignore the fact that the county had done an affirmative act that had made the road "out of condition" and "impassable and unfit for the safe use of travelers." In doing so, the court looked to the whole statute, and defined the broader phrase "keeping in proper repair" to include a duty for the county to act with some degree of care when working on or around a county road or bridge. The *Bales* court thus placed some specific

limits upon R.C. 305.12 and when it may be held to abrogate the sovereign immunity of a county. First, the county must have negligently performed some act or duty, and their immunity will not be abrogated if the negligence was that of another party and merely allowed to remain. Second, the county's sovereign immunity will be abrogated even if the road or bridge is structurally sound. Third, the negligent act by the county must affect a user of the road or bridge and the court does not seem to extend liability to adjacent property owners of third parties. See, also, *Sheley* v. *Swing* (C.P. 1938), 28 Ohio Law Abs. 319 [13 O.O. 434]; *Dunn* v. *Brammer* (1956), 102 Ohio App. 89 [2 O.O.2d 75].

We therefore find, in light of *Starcher* and *Ditmyer,* that the facts herein fall within R.C. 305.12 abrogating the immunity ordinarily enjoyed by the Carroll County Commissioners.

Accordingly, we sustain appellant's assignment of error and reverse the judgment of the trial court.

Since this opinion deals only with the propriety of a summary judgment of dismissal, the factual matters herein having not been brought to trial, we remand this cause to the trial court for further proceedings according to law and not inconsistent with this opinion.

*Judgment reversed and case remanded.*

LYNCH, P.J., and O'NEILL, J., concur.