DITMYER, APPELLEE, ET AL., *v.* BOARD OF
COUNTY COMMISSIONERS OF LUCAS COUNTY, APPELLANT.

(No. 80-125—Decided December 17, 1980.)

*Messrs. DeLibera, Lyons, Koblentz & Scott, Mr. Paul O. Scott, Messrs. Evans & St. Clair* and *Mr. Robert B. St. Clair,* for appellee.

*Mr. Anthony G. Pizza,* prosecuting attorney, *Mr. David J. Simko* and *Mr. Paul Goldberg,* for appellant.

LOCHER, J. Appellant, in its first proposition of law, asserts, in essence, that snow removal does not come within the purview of R. C. 305.12, which states that the board of county commissioners "shall be liable, in its official capacity, for damages received by reason of its negligence or carelessness in not keeping any***road or bridge *in proper repair***.*" (Emphasis added.)

This court holds that R. C. 305.12, which is a statutory abrogation of sovereign immunity, does not encompass snow removal operations.

Sovereign immunity is recognized in the Ohio Constitution by Section 16 of Article I, which reads, in pertinent part, as follows:

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

By this constitutional provision, sovereign immunity is a part of the substantive law of Ohio, and, therefore, abrogation of any such immunity must emanate primarily from the General Assembly. See *Schaffer* v. *Board of Trustees* (1960), 171 Ohio St. 228.

R. C. 305.12 imposes liability on the county commissioners for negligence or carelessness in failing to keep roads or bridges "in proper repair." Sovereign immunity of the county commissioners has been legislatively abrogated only to the extent of keeping roads or bridges "in proper repair."

R. C. 305.12 reads, in pertinent part, as follows:

"The board of county commissioners may sue and be sued, plead and be impleaded in any court of judicature, bring, maintain, and defend all suits in law or in equity, involving an injury to any public, state, or county road, bridge, ditch, drain, or watercourse established by such board in its county, and for the prevention of injury thereto. The board *shall be liable, in its official capacity, for damages received by reason of its negligence or carelessness in not keeping any such road or bridge in proper repair\* \* \*.*" (Emphasis added.)

It is a rudimentary rule of construction in Ohio that statutes in derogation of the common law are to be strictly construed. In *Weiher* v. *Phillips* (1921), 103 Ohio St. 249, this court, in determining matters concerning present R. C. 305.12, in the first paragraph of the syllabus, stated:

"A board of county commissioners is not liable in its official capacity for damages for negligent discharge of its official duties except in so far as such liability is created by statute, and such liability *shall not be extended beyond the clear import of the terms of the statutes.*" (Emphasis added.)

See, also, *Bd. of County Commrs.* v. *Darst* (1917), 96 Ohio St. 163, at page 167.

Analysis of the issue herein pivots upon the word "repair" in R. C. 305.12. The Court of Appeals determined "that the plain meaning of repair is 'to put back in good condition after damage.' In other words, repair means to remedy. Such remedy includes snow removal."

However, we feel that the Court of Appeals has overextended the definition of "repair" far beyond the ordinary meaning of the word. For example, in Black's Law Dictionary (5 Ed.), "repair" is defined as follows:

"To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction."

Clearly, snow removal, which does not mend, remedy,

restore, or renovate roads, is not encompassed within the usual definition of repair.

Noting the above rule of construction, it is untenable to judicially expand the word "repair" in R. C. 305.12 so as to create liability for negligent snow removal operations.

Analysis of case law in R. C. 305.12 and its predecessor, namely G. C. 2408, reveals that the intent of the General Assembly was to abrogate immunity from the county commissioners in matters concerning roads and bridges that have either deteriorated or been disassembled. *Lengyel* v. *Brandmiller* (1942), 139 Ohio St. 478 (bridge collapsed); *Starling* v. *Bd. of County Commrs.* (1935), 53 Ohio App. 293 (rut in road berm); *Whiting* v. *Niehaus* (1915), 4 Ohio App. 208 (trench in road); *Guernsey County Commrs.* v. *Black* (1911), 24 C. D. 164, affirmed (1913), 88 Ohio St. 587 (hole in road berm).

The statute in question has also been applied to obstructions intentionally placed on a highway for the actual repair of roads or bridges. *Pancake* v. *Wakefield* (1956), 102 Ohio App. 5 (crushed stone piles on highway); *Bales* v. *Bd. of County Commrs.* (1928), 30 Ohio App. 249 (crushed stone piles on highway); *Brownfield* v. *Clapham* (1916), 27 C. D. 424 (wire barricade stretched across road).

Yet, a further examination of case law denotes that liability will not be imposed under the purview of R. C. 305.12, when the obstructions or interferences are unrelated to the conditions of the roadbed. *Western Pa. Natl. Bank* v. *Ross* (C. A. 6, 1965), 345 F. 2d 525 (tree limbs obscuring stop sign); *Ebert* v. *Commrs. of Pickaway County* (1907), 75 Ohio St. 474 (stone piles placed on roadside); *Allison* v. *Bd. of County Commrs.* (1935), 19 Ohio Law Abs. 74 (bridge narrower than roadway); *Spronk* v. *Campbell* (1940), 31 Ohio Law Abs. 597 (county truck placed on roadway); *Day* v. *Manrod* (1942), 29 O. O. 298 (metal air compressor and truck in roadway).

Furthermore, analysis of other statutes, which abrogate immunity from other Ohio political subdivisions, reveals that the General Assembly did not intend to impose liability upon the county commissioners to the extent asserted by the appellee and the Court of Appeals. The language employed in R. C. 305.12 limits liability in matters concerning roads and bridges and mentions that they must be kept "in proper

repair." The General Assembly could easily have used other terminology and thereby expanded the liability of the county commissioners.

For example, R. C. 723.01, which is also an abrogation of sovereign immunity, imposes liability upon municipalities much akin to R. C. 305.12. R. C. 723.01 and its predecessor, G. C. 3714, mandate that municipalities "shall cause them [roads] to be open, *in repair, and free from* nuisance." (Emphasis added.)

The failure of the General Assembly to use the phrase "free from nuisance" or other such terminology in R. C. 305.12 clearly indicates its intention not to impose liability in matters unrelated to actual road repair activities. See *Milner* v. *County Commrs.* (1913), 14 N. P. (N. S.) 141, and *Day* v. *Manrod, supra.* Therefore, the county commissioners are not liable in their official capacity for matters that are considered a nuisance, but are only liable for their failure to keep the roadbed and the bridges in proper repair.

Additionally, it is noted that R. C. 5501.41 is a clear legislative enactment, which expressly concerns snow removal, and reads as follows:

"The director of transportation *may* remove snow and ice from state highways, purchase the necessary equipment including snow fences, employ the necessary labor, and make all contracts necessary to enable such removal. The director *may* remove snow and ice from the state highways within municipal corporations, but before doing so he must obtain the consent of the legislative authority of such municipal corporation. The board of county commissioners on county highways, and the board of township trustees on township roads, shall have the same authority to purchase equipment for the removal of and to remove snow and ice as the director has on the state highway system." (Emphasis added.)

R. C. 5501.41 clearly authorizes, but does not require, the county commissioners to remove snow from roads.

There is an additional statute which gives support to our holding that snow removal is not within R. C. 305.12. R. C. 5549.01 states, in pertinent part, as follows:

"The board of county commissioners may purchase such machinery, tools, or other equipment, including special

wearing apparel, for the construction, improvement, maintenance, or repair of the highways, bridges, and culverts under its jurisdiction as it deems necessary. The board may also purchase, hire, or lease automobiles, motorcycles, or other conveyances and maintain them for the use of the county engineer and his assistants when on official business. All such machinery, tools, and equipment, including special wearing apparel, and conveyances belonging to the county shall be under the care and custody of the engineer, and shall be plainly and conspicuously marked as the property of the county.''

R. C. 5549.01 concerns the purchase of machinery and equipment for the repairing of roads and highways. If we were to hold that snow removal is within the purview of R. C. 305.12, then R. C. 5501.41 and 5549.01 would be totally superfluous. By reading R. C. 305.12, 5501.41 and 5549.01 *in pari materia,* the clear legislative intent displayed is that snow removal is not encompassed within the language in R. C. 305.12 of "keeping***in proper repair.''

For the foregoing reasons, appellant's first proposition of law is held meritorious.

Appellant, in its second proposition of law, asserts that, if R. C. 305.12 does encompass snow removal operations, then there must be actual or constructive notice of the fact that a county road was not kept in repair before the political subdivision will be held liable.

Due to our determination of appellant's first proposition of law, discussion of its second proposition of law is not necessary.

For the reasons expressed herein, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., P. BROWN, SWEENEY, HOLMES and DOWD, JJ., concur.

W. BROWN, J., dissents.