**Scanlon**
**v.**
**Consolidated Rail Corp.**
*[Cite as 2 AOA 276]*

*Case No. 89FU000008*
*Fulton County, (6th)*
*Decided April 13, 1990*

*R.C. 2744.01*

R.C. 2744.02
R.C. 4511.11

*Michael Kube, Counsel for Appellant.*

*Thomas Furey and Richard Ellenberger, Counsel for Appellees.*

GLASSER, J.

This is an appeal from a decree of summary judgment entered April 28, 1989, in favor of defendants-appellees, Fulton County Board of Commissioners ("Fulton County").

The undisputed facts of this case are as follows. On April 18, 1986, plaintiff-appellant, John G. Scanlan, Jr., was struck, while driving his car, by a Consolidated Rail Corporation ("Consolidated") train. The incident occurred while he was crossing train tracks that intersect Leggett Road, County Road E, in Clinton Township, Fulton County, Ohio.

On August 4, 1987, appellant filed a complaint against both Fulton County and Consolidated. On November 30, 1988, Consolidated and Fulton County jointly moved for summary judgment. Subsequently, the Fulton County Court of Common Pleas denied the motion as to Consolidated and granted it as to Fulton County. It is the granting of Fulton County's motion for summary judgment to which appeal is taken.

Appellant presents two assignments of error, which read as follows:

"1. The Trial Court erred in granting Defendant Fulton County Board of Commissioners' Motion for Summary Judgment.

"2. The final order is contrary to law as to the granting of Defendant Fulton County Board of Commissioners' Motion for Summary Judgment."

Since appellant's two assignments of error essentially deal with the appropriateness of the trial court's granting of Fulton County's motion for summary judgment, they will be considered together.

Before a court may grant a motion for summary judgment, three criteria must be met. The Supreme Court of Ohio has stated:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, at 66.

In the present case, if this court's review of the record as presented uncovers a failure to comport with the criteria for granting a motion for summary judgment, the decision of the trial court will be reversed.

The primary argument made by appellant in this case is that a genuine issue of fact exists as to whether Fulton County is immune from civil liability for acts or omissions in the placement of signs which resulted in harm to Scanlan and, therefore, the trial court's granting of appellee's motion for summary judgment was in error.

The history of the sovereign immunity of political subdivisions in Ohio has been guided by judicial interpretation of common law for most of the state's existence. However, on November 20, 1985, the Political Subdivision Tort Liability Act became effective. R.C. 2744. R.C. 2744 is a legislative response to the Supreme Court of Ohio's almost total abrogation of municipal immunity. *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31; *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26.

Our research discloses relatively little case law on interpreting R.C. 2744 and no cases which construe the relevant definitional subsection, R.C. 2744.01(C)(2)(j). Therefore, this court must contain its construction of the statute within the parameters of the statute as written. *State, ex rel. Meyer,* v. *Chiaramonte* (1976), 46 Ohio St. 2d 230, at 238. In addition, we must give paramount consideration to the intent of the legislature in enacting the statute. *McCormick* v. *Alexander* (1825), 2 Ohio 66. In *Miller* v. *Fairley* (1943), 141 Ohio St. 327, at paragraph two of the syllabus, the Supreme Court of Ohio stated that "statutes are to be read in the light of attendant circumstances and conditions, and are to be construed as they were intended to be understood. ***"

Under R.C. 2744.02, functions of political subdivisions are classified as either "governmental" or "proprietary." The section goes on to say that:

"*** Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

R.C. 2744.01 provides the definitions of "governmental" and "proprietary" functions. Division (C)(1) of that section states that a "'governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section ***". Division (C)(2) states that "'a governmental function' includes, but is not limited to the following: *** (j) The regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices."

R.C. 2744 was enacted November 20, 1985, Am. Sub. H.B. No. 176 (141 Ohio Laws 1699). The original act, as adopted, included the current sections 2744.01(C)(2)(j) and 2744.02. Section eight of the bill states:

"SECTION 8. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for such necessity is that the protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local government and the continued ability of local governments to provide public peace, health, and safety services to their residents. Therefore, this act shall go into immediate effect."

Consequently, it is apparent that the original act as adopted was intended to offer political subdivisions a general grant of immunity from tort liability under most circumstances.

The legislature later made clear its intent to enact the specific "governmental" functions listed under R.C. 2744.01(C)(2), which includes the placement of traffic signs. That intent was shown in an amendment to R.C. 2744.01 enacted in Am. Sub H.B. No. 205 (141 Ohio Laws 2685). In that amendment the legislature added to the list of "governmental" functions that are expressly enumerated--the activity of a political subdivision in maintaining parks, etc. In section five of the amending bill the legislature gave its reasons and intent in immunizing activities listed in R.C. 2744.01(C)(2). Section five reads:

"SECTION 5. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reasons for the necessity are that, under the Political Subdivision Sovereign Immunity Law, political subdivisions are civilly liable for injuries, death, or loss to persons or property negligently caused by their employees in connection with the operation of parks, playgrounds, playfields, and other recreational facilities; that at least one political subdivision have been unable to procure insurance at affordable rates to cover this potential civil liability, and consequently has closed its recreational facilities rather than operate without liability insurance; and that, due to the potential unavailability of affordable liability insurance for other political subdivisions, unless the operation of their parks, playgrounds, playfields, and certain other recreational facilities is immediately categorized as a governmental function and immunized from civil liability under the Political Subdivision Sovereign Immunity Law, these other political subdivisions also may close their facilities. Therefore, this act shall go into immediate effect."

Obviously, the legislature intended, and continues to intend "governmental" functions listed in R.C. 2744.01(C)(2) to be "immunized from civil liability under the Political Subdivision Sovereign Immunity Law." *Id.* Among the R.C. 2744.01(C)(2) functions is subdivision (j); "The regulation of traffic, and the erection or nonerection of traffic signs, signals or control devices;"

In the present case, the trial court, appellant and appellees cite to *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222; *Winwood* v. *Dayton* (1988), 37 Ohio St. 3d 282, and *Hull* v. *Baltimore & Ohio RR. Co.* (1987), 37 Ohio App. 3d 94. In appellant's reply brief, citation is made to *Tiley* v. *Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88CA-7, unreported. Interesting and persuasive arguments are made using these cases. However, in view of the legislative intent in enacting R.C. 2744 and that section's effective date, these cases do not apply since they all involve causes of action which arose prior to the effective date of R.C. 2744. Appellant additionally asserts and appellee concedes that Fulton County failed to properly place signs in advance of the Leggett Road rail crossing and that Fulton County failed to paint railroad crossing warnings on the pavement in advance

of the crossing, both of which were to be done in accordance with the Ohio Manual of Uniform Traffic Control. However, the acknowledged function of Fulton County to place signs is a "governmental" function as defined in R.C. 2744.01(C)(2)(j) and, therefore, although possibly negligent in its actions, Fulton County is nonetheless immune from civil liability for its failure to comport with the Ohio Manual of Uniform Traffic Control.

A second argument made by appellant is that the catchall provision of R.C. 2744.02(B)(5) imputes liability upon Fulton County.

Appellant points out that R.C. 2744.02(B)(5) provides authority for the imposition of liability upon a political subdivision "*** when *liability* is expressly imposed *** by a section of the Code. ***" (Emphasis added.) Appellant further asserts that R.C. 4511.11(A) provides that express liability. R.C. 4511.11(A) reads as follows:

"(A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code upon highways under their jurisdiction. ***"

In addition, R.C. 4511.11(D) reads: "All traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications."

However, appellant fails to take into consideration the additional language in R.C. 2744.02(B)(5) which states that "liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

In the present case, Fulton County clearly has a responsibility to conform to the Ohio Manual of Uniform Traffic Controls as per R.C. 4511.11. However, that section does not expressly impose liability for its violation upon a political subdivision. Therefore, R.C. 4511.11 does not apply to impose liability upon Fulton County through R.C. 2744.02(B)(5).

As an alternative argument, appellant asserts that Fulton County is liable because failure to properly place signs constitutes a failure to keep the road in proper repair and free from nuisance. Appellant correctly asserts that failure to keep a road in good repair and free from nuisance is an activity or omission under which liability is imposed by R.C. 2744. R.C. 2744.02(B)(3). R.C. 2744.02(B)(3) states:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

However, in keeping with the aforementioned strict statutory construction that is required in interpreting R.C. 2744, the legislature's intent in enacting R.C. 2744.02(C)(2)(j) was to expressly exclude the placement or nonplacement of signs from within the realm of activity under which Fulton County can be held civilly liable. H.B. 176, *supra.* In the present case, the asserted acts and omissions of Fulton County involve activity encompassed within those contemplated by R.C. 2744.01(C)(2)(j) and therefore are not covered by R.C. 2744.02(B)(3). This being the case, the activities in question in this case are excludable, from those in which liability, will be imposed as "governmental" functions.

Moreover, the repair function contemplated in R.C. 2744.02(B)(3) has been consistently defined to mean a duty "to put back in good condition after damage." *Ditmyer* v. *Board of Cty. Commrs.* (1980), 64 Ohio St. 2d 146. In *Ditmyer*, which involved an asserted failure of the Board of Commissioners of Lucas County to properly remove snow, the Supreme Court of Ohio said; "Clearly, snow removal, which does not mend, remedy, restore or renovate roads, is not encompassed within the usual definition of repair." *Id.* at 148-149.

In considering the duty to keep roads free from nuisance, plaintiff cites to *Covent Ins. Co. Ltd.* v. *Carroll Cty. Commrs.* (1981), 2 Ohio App. 3d 410 and states that the case is still relevant to establish the definition of nuisance under R.C. 2744.02(B)(3).

In *Covent*, a county board of commissioners was held liable for the placement of a bridge clearance sign which was incorrect. The sign stated that there was more clearance under the bridge superstructure then there actually was. That error resulted in a truck striking the bridge and doing considerable damage. In

addition to the fact that *Covent* involved an accident which occurred prior to the effective date of R.C. 2744, appellant's assertion that the case shows that the placement of a sign constitutes a nuisance, is faulty. In *Covent*, the physical impediment represented by the bridge superstructure actually constituted the nuisance. *Id.* at 413.

In the present case, Fulton County's action pertaining to the placement of signs does not involved the mending, remedying, restoring or renovating of a roadbed. In addition, it does not involve the placement of a physical impediment in the road. Therefore, appellant's assertion fails under this analysis as well.

In view of the foregoing discussions, Fulton County clearly is immune from civil liability for its failure to properly place signs at the Leggett Road crossing. This is so because the clear intent of the Ohio legislature is to afford Fulton County that immunity in order to facilitate fair government and to avoid the bankrupting and impotentization of political subdivisions in light of an inability to protect itself in other ways. Consequently, after viewing the evidence most strongly in favor of appellant, there is no genuine issue as to any material fact upon which reasonable minds could differ and therefore appellee, Fulton County, was entitled to judgment as a matter of law. Consistent with that determination, appellant's two assignments of error are found not well-taken and the judgment of the Fulton County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

CHARLES D. ABOOD, J.
Concurs in judgment only.

Prior to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.