FEITSHANS et al., Appellants,

v.

DARKE COUNTY et al., Appellees.

[Cite as *Feitshans v. Darke Cty.* (1996), 116 Ohio App.3d 14.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 96–CA–1405.

Decided Nov. 29, 1996.

---

16

---

*E.S. Gallon & Associates* and *Patrick W. Allen*, for appellants.

*Douglas C. Boatwright* and *Douglas J. Suter*, for appellees.

---

FREDERICK N. YOUNG, Judge.

Plaintiffs-appellants Mary M. and Jeff Feitshans appeal from the judgment of the Darke County Court of Common Pleas granting the motion for summary judgment of defendants-appellees, Darke County, Ohio, Darke County Commissioners, and Darke County Engineer. The case arose out of a one-car accident that occurred on Horatio–Harris Creek Road in Darke County on the morning of Friday, July 31, 1992.

For a fourteen-hour period between the afternoon of July 30 and the morning of July 31, Darke County suffered a heavy thunderstorm that caused severe flooding throughout central Darke County. The Darke County Sheriff's Office received complaints about high water on county roads, including several points on Horatio–Harris Creek Road. In response to the complaints, the Drake County Road Superintendent, Joe Van Hickle, posted "High Water" signs on both sides of the road to warn approaching motorists. However, at the intersection of Horatio–Harris Creek Road and Horatio–New Harrison Road, Hickle posted a sign only for westbound traffic at one spot. The Darke County Engineer's employees patrolled the areas searching for high water spots, responding to complaints, and posting signs until approximately 1:00 a.m. on July 31, when the complaints stopped coming in. The storm apparently continued until about 8:00 a.m.

At about 10:30 a.m. on July 31, Mary Feitshans was traveling east on Horatio–Harris Creek Road. Feitshans saw water in her lane ahead, but saw no signs indicating that it was high water. Because another vehicle, a semi with a trailer, was traveling in the eastbound lane, Feitshans attempted to drive through the water. The water was deeper than she had anticipated, and it caused her to lose control of her car and to crash into a tree. After it was notified of the accident, the Darke County Engineer's Office placed high water signs at the scene and examined the culvert and drainage basin that were designed to control the flow of rain water on the road. The employees found the drainage system to be unblocked but inadequate to handle the amount of water that the storm had brought.

Mary Feitshans brought suit against the defendants for her injuries. Her husband, Jeff Feitshans, also brought a claim for loss of consortium. The defendants filed a joint motion for summary judgment, and the court granted it. The Feitshans brought this timely appeal. They assert the following assignment of error:

"The trial court erred to the prejudice of the plaintiffs-appellants in granting the motion for summary judgment filed by the defendants, Darke County, Ohio, Darke County Commissioners, and Darke County Engineer."

Summary judgment can be rendered to the moving party only upon a showing that (1) there is no genuine issue of material fact, (2) reasonable minds in construing the evidence most strongly in favor of the nonmoving party can come to but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C); see, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Although appellants bring only this assignment of error, their argument in support of it raises two distinct issues. First, they argue that they raised genuine issues of material fact pertaining to duty, breach, and causation, such that summary judgment was inappropriate. Second, they argue that the trial erred in its determination that the defendants were protected by sovereign immunity. Because we find it dispositive, we address only the second argument.

## I

Appellees contend that they are immune from liability for Mary and Jeff Feitshans's injuries by virtue of the Political Subdivision Tort Liability Act ("the Act"), codified at R.C. Chapter 2744. Prior to the Act, which became effective in 1989, the doctrine of sovereign immunity was primarily a creature of the courts. With respect to municipalities, its applicability was dependent upon archaic and esoteric distinctions, and it yielded inconsistent and unprincipled decisions. *Haas v. Hayslip* (1977), 51 Ohio St.2d 135, 140, 5 O.O.3d 110, 113, 364 N.E.2d 1376, 1379 (William B. Brown, J., dissenting); *Hack v. Salem* (1963), 174 Ohio St. 383, 391, 23 O.O.2d 34, 38, 189 N.E.2d 857, 862 (Gibson, J., concurring in judgment); see also Comment, The Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 501; Comment, The Role of the Ohio Supreme Court in Opening the Courtroom Doors to Tort Victims (1986), 55 U.Cin.L.Rev. 477, 484.

In 1982, the Ohio Supreme Court abrogated the judicial doctrine of sovereign immunity as it related to municipalities. *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 2 OBR 572, 575, 442 N.E.2d 749, 752. The following year, the court, while reaffirming *Haverlack*'s rejection of municipal immunity

generally, held that municipal immunity was not abrogated as to acts or omissions that go to the essence of governing or that are the subject of statutory immunity. *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 35, 6 OBR 53, 56, 451 N.E.2d 228, 232. The Act generally restores immunity for all political subdivisions. See R.C. 2744.01(F). R.C. 2744.02(A)(1) reads in relevant part:

" * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Thus, the Act provides that political subdivisions are, absent an exception, immune from tort liability. The statute enumerates five exceptions to immunity from tort actions. See R.C. 2744.02(B)(1) through (5). These exceptions include liability for failure to keep public passages free from nuisances and liability for harm resulting from the negligent performance of proprietary functions. See R.C. 2744.02(B)(2) and (3). Even if a claim alleges that the subdivision is liable under one of the exceptions, the Act provides several defenses and immunities that may nevertheless apply to defeat the tort claim. See R.C. 2744.03.

In order to determine whether summary judgment was appropriately granted by the trial court, we must first consider the applicability of the Act to this case. A political subdivision's immunity from suit is purely a question of law and is, accordingly, to be determined by the court. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869.

The actions of the Darke County officials named as defendants are veiled in immunity as long as their actions were "performed in connection with a governmental or proprietary function" and do not come under a statutory exception to immunity. Appellants seem to assert first that the posting of temporary "high water" signs on roadsides does not constitute a "governmental function" under the statutory definition, as it has been interpreted by Ohio courts, and that, accordingly, the statutory immunity is not applicable. Second, appellants contend that at least one of the exceptions stated in R.C. 2744.02 applies to frustrate appellees' claim to immunity. Finally, appellants argue that they have raised a genuine issue of material fact with respect to whether the county and its employees acted in a wanton or reckless manner under R.C. 2744.03(A)(5). We will address these arguments individually.

A. Governmental Function; R.C. 2744.01(C)(2)

The statute's definition of a "governmental function" expressly includes "the erection or nonerection of traffic signs." R.C. 2744.01(C)(2)(j). Accordingly,

the immunity granted by R.C. 2744.02(A)(1) protects the county from liability for injuries sustained in connection with its performance of its governmental function of erecting signs, absent a relevant exception under R.C. 2744.02(B). However, appellants argue that the erection of signs contemplated by the statute does not extend to temporary warning signs, such as the high water signs at issue in this case.

Appellants contend that Ohio courts have made a distinction between traffic control systems and temporary traffic signs, on the basis that while the erection of the former involves discretionary planning decisions, the posting of the latter does not. Appellants point to the Ohio Supreme Court's decisions in *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, motion for reconsideration denied (1994), 69 Ohio St.3d 1483, 634 N.E.2d 1029, and *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, to support this position. In *Franks,* the court addressed the extent of a political subdivision's liability for failing to keep its roadways "free from nuisance" under R.C. 2744.02(B)(3). 69 Ohio St.3d at 346, 632 N.E.2d at 503. More precisely, the court considered whether the statutory definition of "nuisance" encompasses the failure to erect signs. The plaintiffs-appellants in *Franks* asserted that the lack of an adequate warning sign, among several other factors, created a nuisance on a curving section of road.

The court noted first that R.C. 2744.02(B)(3) provides that political subdivisions may be held liable for damages resulting from "their failure to keep public roads, highways, [and] streets * * * free from nuisance." The court also remarked that, under R.C. 2744.03(A), political subdivisions are nevertheless immune when the harm results from an exercise of discretion, unless such discretion was exercised maliciously or recklessly. See R.C. 2744.03(A)(3) and (A)(5). With respect to the defendants' argument that their decisions regarding the curve were discretionary and, thus, immune from liability, the court stated:

"Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making, or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for failing to do so.

"Moreover, it is undisputed that the directional arrow sign did not comply with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways as required by R.C. 4511.11(A). The evidence indicated that in addition to not being reflectorized, the sign was smaller than the recommended size and was not properly placed or checked as required by the manual. *While the installation of traffic control devices by a political subdivision may be discretionary pursuant to the manual, once the decision to install has been made, the implementation of*

*that decision is not immune from liability."* (Emphasis added.) 69 Ohio St.3d at 349, 632 N.E.2d at 505.

Thus, the court held that a political subdivision's failure to maintain a sign may constitute a nuisance, but the failure to erect a sign may not. 69 Ohio St.3d at 349, 632 N.E.2d at 505. Additionally, the court stated that the decision whether to erect signs is discretionary and, thus, subject to the defenses provided by R.C. 2744.03(A). Appellants argue that the court distinguished between the installation of temporary and permanent traffic signs, and between the planning and implementation of such installations. They refer to the court's decision in *Winwood, supra,* for the test for distinguishing between discretionary and nondiscretionary functions.

*Winwood* involved a municipality's liability for damages arising from its failure to install traffic control devices at an intersection. 37 Ohio St.3d at 283, 525 N.E.2d at 809–810. The *Winwood* court did not interpret R.C. 2744.01 *et seq.,* but, rather, involved the common law as it existed prior to the implementation of the Act. The court stated that sovereign immunity existed only for " 'those acts or omissions involving * * * the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.' " 37 Ohio St.3d at 284, 525 N.E.2d at 810, quoting *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraph two of the syllabus. The court held that in light of the fiscal, safety, and engineering considerations involved, the municipality's decision not to install traffic control devices at the intersection required basic policy determinations and a high degree of official discretion. For further support, the court noted that the Ohio Manual of Uniform Traffic Control Devices provides standards for the installation of such devices, but leaves the decision to install to the discretion of local authorities. In distinguishing the decision to install traffic devices from the actual implementation of such a decision, the court stated:

"[The decision not to install traffic devices] is a discretionary function based on policy considerations, while steps such as the design, placement, repair and maintenance of traffic control devices constitute the mere implementation of a policy decision. Such implementation involves very little discretion or independent judgment, and is therefore not immune." 37 Ohio St.3d at 285, 525 N.E.2d at 811.

Appellants contend that, under the reasoning in both *Franks* and *Winwood,* the posting of temporary high water signs is not a discretionary act. They argue that the decision to post a sign at Horatio–Harris Creek Road did not involve the kind of high-level policy decisions contemplated by the *Winwood* court. Likewise, they argue that posting the signs was mere implementation of a discretion-

ary function, not the exercise of a traditional discretionary function entitled to immunity.

While appellants make a colorable argument that these cases draw a meaningful distinction between planning and implementation, and permanent and temporary signs, with respect to the issue of discretion, they fail to explain the significance of discretion in the case *sub judice*. If they are indeed claiming, as they appear to be, that the posting of the high water signs in this case was not a government function for purposes of the Act, we find little difficulty in rejecting this argument. The Act defines "government function" without any reference to whether a function is discretionary or nondiscretionary, and we find no cause to graft a requirement onto the statute.

■ Additionally, *Franks* concerned the applicability of the "discretion" defenses of R.C. 2744.03(A)(3) and (A)(5) in cases involving alleged nuisances under R.C. 2744.02(B)(3), and *Winwood* preceded the Act altogether. Appellees need not have been acting in a discretionary manner in order to invoke the broad blanket immunity provided by R.C. 2744.02(A)(1). See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107 ("R.C. 2744.02[A][1] creates a broad immunity, subject to enumerated exceptions"); *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 446, 666 N.E.2d 316, 320 (R.C. 2744.01[A][1] provides "blanket immunity"). Under our reading of the Act, the defenses set forth in R.C. 2744.03 are only relevant where the plaintiff demonstrates that the government function at issue comes under a specific exception to general immunity. *Hill v. Urbana* (Aug. 9, 1995), Champaign App. No. 94–CA–22, unreported, 1995 WL 472138. We have no cause to consider whether the posting of temporary high water signs is discretionary or nondiscretionary unless appellants demonstrate the applicability of a particular exception. Accordingly, we now turn to the exceptions to immunity.

### B. Exceptions to Immunity; ℝ.C. 2744.02(B)(2)

■ Appellants assert that, even if the posting of the signs was a government function for purposes of the statute, appellees are not immune from liability because even discretionary functions may not be undertaken in a negligent manner. Appellants argue that R.C. 2744.02(B)(2) operates to except such negligent performance from the Act's immunity. R.C. 2744.02(B)(2) states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Appellants claim that this provision stands for the proposition that "[g]overnment or discretionary functions are immune; but once undertaken, they must be exercised in a non-negligent manner." Appellant's Brief at 27. We could apply this broad reading of the

statutory exception to this case only by acting in total defiance of the express words of the statute.

In *Shank v. Springfield* (May 3, 1995), Clark App. No. 94–CA–71, unreported, 1995 WL 259188, we held that R.C. 2744.02(B)(2) was not applicable to a political subdivision's construction of driveway aprons. We noted that R.C. 2744.01(G)(1) defines "proprietary function" as a function that is not specified as a "governmental function" and that " 'promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental agencies.' " *Shank, supra,* at 8, quoting R.C. 2744.01(G)(1).

We find that, like the construction of driveway aprons in *Shank,* the posting of high water signs in the case *sub judice* is a governmental function, not a proprietary one. The posting of such signs is hardly "customarily" performed by nongovernmental entities. In fact, the Ohio Manual of Uniform Traffic Control Devices gives guidance for the installation of such signs by government agencies. Tellingly, appellants do not argue even that the function at issue is proprietary; rather, they attempt to circumvent the limitations of the exception by simply ignoring them. This tactic is unavailing. We hold that in light of the statute's express exclusion of governmental functions from the meaning of proprietary functions, R.C. 2744.02(B)(2)'s exception for the negligent performance of a proprietary function is not applicable to the posting of high water signs.

 Although appellants did not raise it in their initial brief, the potential applicability of another statutory exception, R.C. 2744.02(B)(3), was discussed in appellees' brief, appellants' reply brief, and at oral arguments, and merits our consideration. R.C. 2744.02(B)(3) reads, in relevant part:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, * * * within the political subdivisions open, in repair, and free from nuisance."

 Appellants do not argue, and *Franks, supra,* seems to foreclose the possibility, that the failure to erect a high water sign for eastbound travelers was a "nuisance" under this section of the Act. See, e.g., *Jones v. Franklin* (1995), 102 Ohio App.3d 114, 656 N.E.2d 1025 ("the unequivocal language of *Franks* * * * expressly excludes the failure to install a sign from the definition of a nuisance"); *Scanlon v. Consol. RR. Corp.* (Apr. 13, 1990), Fulton App. No. 89–FU–8, unreported (failure to place signs at a railroad crossing is not a nuisance); see, also, *Covent Ins. Co., Ltd. v. Carroll Cty. Commrs.* (1981), 2 Ohio App.3d 410, 2 OBR 486, 442 N.E.2d 486 (placement of sign giving incorrect bridge clearance was not a nuisance). Rather, appellants urge us to hold that the flooded area of Horatio–Harris Creek Road was a nuisance for purposes of the Act, and that,

consequently, appellees are not immune from liability. In determining a political subdivision's immunity under R.C. 2744.02(B)(3), our central inquiry is "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." *Neiderbrach v. Dayton Power & Light Co.* (July 21, 1993), Miami App. No. 92CA54, 1993 WL 277256, citing *Mfr.'s Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823. Additionally, in order for us to impose liability under the nuisance exception to liability, the political subdivision must have had either actual or constructive notice of the nuisance. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 97, 566 N.E.2d 154, 160.

The Ohio Supreme Court has considered the scope of a political subdivision's liability for the effect of natural elements on the safety of its roads. In *Ditmyer v. Lucas Cty. Bd. of Commrs.* (1980), 64 Ohio St.2d 146, 18 O.O.3d 372, 413 N.E.2d 829, a pre-Act case, the court interpreted R.C. 305.12, which imposed liability on counties for failure to keep roads "in proper repair." The court held that snow removal is not encompassed by the definition of the word "repair" and reasoned that the legislature's failure to use the phrase "free from nuisance" in the statute indicated that no liability adhered to matters unrelated to road repair. 64 Ohio St.2d at 150, 18 O.O.3d at 374–375, 413 N.E.2d at 832. The corollary to this holding is, of course, that the use of the phrase "free from nuisance" should be read inclusively to cover obstructions, such as rain or snow, that are not the result of deterioration, disassembly, or intentionally placed obstructions.

R.C. 2744.02(B)(3) does of course utilize the words "free from nuisance." However, more recent case law directly interpreting the modern statute suggests that the phrase "free from nuisance" may not extend to accumulated rainfall. At least one Ohio court of appeals has precisely considered whether water accumulation on a road constitutes a nuisance for purposes of R.C. 2744.02(B)(3). In *Williams v. Cuyahoga Falls* (Aug. 30, 1995), Summit App. No. 16981, unreported, 1995 WL 513824, the Court of Appeals for the Ninth Appellate District held that the "rainwater accumulated during a rainstorm, without more, cannot raise a genuine issue of material fact regarding the existence of a nuisance." The court also rejected the plaintiff's claim that a one-inch height difference between the berm and the road was itself a nuisance because it prevented adequate drainage of water from the road. The *Williams* court further held that police reports describing accidents at the same location could not constitute notice, where the reports, while stating that the roads were wet, did not indicate the presence of accumulated water.

■ We are inclined to agree with the *Williams* court that accumulated rainfall is generally not a nuisance within the meaning of the Act. Normally, for purposes of sovereign immunity, "nuisances" are obstructions or dangerous

developments that are either subject to the control of local authorities or of a more permanent nature than accumulated rainwater. See, *e.g., Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502 (sign which had lost its capacity to reflect), motion for reconsideration denied (1994), 69 Ohio St.3d 1483, 634 N.E.2d 1029; *Mfr.'s Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819 (corn growing in such a way as to obstruct driver visibility); *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 564 N.E.2d 462 (foliage blocking driver visibility); *Richards v. Rubicon Mill Condominium Assn.* (1995), 100 Ohio App.3d 264, 653 N.E.2d 751 (overhanging tree limbs), discretionary appeal denied (1995), 72 Ohio St.3d 1530, 649 N.E.2d 839; see, also, *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789 (malfunctioning traffic light); *Robert Neff & Sons v. Lancaster* (1970), 21 Ohio St.2d 31, 50 O.O.2d 80, 254 N.E.2d 693 (overhanging tree limb).

■ Moreover, even if accumulated water can constitute a nuisance under the Act, we find that appellees had neither actual nor constructive notice of the condition of the road such that they may be held liable for appellants' injuries. In order to successfully allege a failure of a political subdivision to exercise its duty, a plaintiff must demonstrate that the political subdivision's agents or officers created the faulty condition or that the political subdivision had notice, either actual or constructive, of the faulty condition. See *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 60, 29 OBR 441, 442, 505 N.E.2d 957, 958, citing *Cleveland v. Amato* (1931), 123 Ohio St. 575, 176 N.E. 227, paragraph one of the syllabus. Appellants offer no evidence that appellees were on actual notice that there was high, freestanding water accumulated at the situs of the accident.

With respect to constructive notice, appellants point to paragraph six of the affidavit of their expert witness, John Stemley, which states:

"The Darke County Engineer's Office was responding to complaints according to their testimony at deposition. Their crew of five discontinued responding between midnight and 1:00 a.m. on July 31, 1992. Assuming those facts to be true, along with the fact that they claim they were experiencing the most severe rain in a band from east to west across the general middle one-third of Darke County and high water in areas where they had not experienced high water before July 30 and 31, 1992, it is my opinion, to a reasonable degree of engineering certainty, that the Darke County Engineer's Office should have engaged a crew of at least five persons to patrol its roadways for water on the roadways in that area of the county which was experiencing the heaviest rainfall. That area was less than 526 miles of roadway alluded to in the deposition of Wayne Light. That patrolling should have continued during the period of rainfall and, in the exercise of reasonable care, should have continued for several hours

thereafter due to run-off. In my opinion, the water at the accident scene was probably receding at the time and before Mr. Light arrived at the scene the morning of July 31, 1992, after the notice received between 10:30 and 11:30 a.m."

Appellants argue that the trial court could have granted summary judgment in this case only by ignoring or improperly weighing the credibility of Stemley. We disagree. The court could have reasoned, as we do, that the relevant factual allegations contained in the affidavit are not of the necessary specificity to support a reasonable inference of constructive notice.

Generally, in order to show that a defendant was on constructive notice, a plaintiff must "demonstrate that the nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and—presuming it had been discovered—it would have created a reasonable apprehension of potential danger." *Hobson v. Dayton* (Sept. 20, 1996), Montgomery App. No. 15497, unreported, 1996 WL 531619, citing *Beebe v. Toledo* (1958), 168 Ohio St. 203, 6 O.O.2d 1, 151 N.E.2d 738. Stemley alleges essentially that appellees were aware that there was flooding throughout the area and that had they searched past 1:00 a.m., they may have discovered the flooded spot at issue. This may be so, but we require more particularized allegations to support an inference of constructive notice. Stemley alleged nothing that indicates that appellees should have been aware of this particular flood spot. At most, his affidavit suggests only that appellees should have known that other flooding was possible.

In *McClellan v. Ohio Dept. of Transp.* (1986), 34 Ohio App.3d 247, 517 N.E.2d 1388, a case that is factually very similar to this one, the Court of Appeals for Franklin County considered what constitutes constructive notice of high water conditions on a highway. The court found no constructive notice, stating:

"There is no evidence that ODOT was aware that there had been high water on the highway in this area at any time since the road was built in 1930. There was testimony that ODOT employees regularly travel this highway and that no one had ever reported high water at that spot." 34 Ohio App.3d at 250, 517 N.E.2d at 1391.

Likewise, in this case, there was no history of flooding in the relevant area. Appellants offer no evidence suggesting that Darke County and its employees should have expected flooding at this section of Horatio–Harris Creek Road any more than they should have known of flooding in any other area in the center of the county. Rather, appellants argue that Darke County should have adopted a more aggressive policy for responding to heavy rains. The Stemley affidavit asserts that appellees' response to the rains, patrolling areas known to be vulnerable to flooding and responding to citizen complaints, was inadequate.

Instead, Stemley would have had appellees patrol, throughout the night and the following morning, the length of every road experiencing heavy rainfall. We fail to see how appellees' failure to engage in such vigilant and costly measures constitutes constructive notice of the flooded area on Horatio–Harris Creek Road.

Appellants' position that appellees' policy for handling heavy rainfall was deficient not only would make Darke County a virtual insurer of its roads, but strikes at the heart of the Political Subdivision Tort Liability Act as well. While we consider the applicability of the so-called "discretionary" defenses elsewhere in this opinion, we merely note here that discretionary decisions involving the allocation of resources, such as are involved here, are precisely what sovereign immunity is designed to remove from legal scrutiny. See, *e.g.*, *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 364, 15 OBR 480, 484, 474 N.E.2d 303, 307. As the Ohio Supreme Court has stated:

"If the municipality were made subject to liability for its decision not to install a particular device, the free exercise of its discretion in this area would be chilled, lessening its ability to deal effectively with the difficult policy issues confronting it on a daily basis." *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 285, 525 N.E.2d 808, 811.

We believe that the same principle applies with equal force to the decisions made by Darke County regarding its policy for reacting to heavy rainstorms. We will not allow appellants to circumvent the haven afforded by the Act by couching their attack on protected policy decisions in terms of constructive notice.

Appellants' failure to offer any evidence creating a nexus between the general notice of flooding throughout central Darke County and the flooded area *sub judice,* especially in light of the undisputed evidence that the relevant portion of road had never flooded before, convinces us that appellees were not on constructive notice of the alleged nuisance.

### C. Additional Defenses or Immunities; R.C. 2744.03

█ Finally, appellants argue that appellees are not immune because they acted in a wanton or reckless manner. The legal basis for this assertion lies in R.C. 2744.03's list of defenses for political subdivisions. R.C. 2744.03 provides in relevant part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, *unless the equipment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.*" (Emphasis added.)

By advancing R.C. 2744.03 as if it were an additional exception to immunity, appellants reveal that they misunderstand the structure of the statute. While R.C. 2744.02(B) provides specific exceptions to the statute's general grant of immunity to political subdivisions, R.C. 2744.03 provides defenses that remain available to the subdivision even when an exception applies. As discussed above, in order for R.C. 2744.03(A)(5) to be relevant, appellants must have demonstrated that an exception under R.C. 2744.02(B) applies. See *Shank, supra,* at 3; *Miller v. Wadsworth* (1994), 93 Ohio App.3d 278, 638 N.E.2d 166; *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 163, 586 N.E.2d 217, 220, jurisdictional motion overruled (1990), 53 Ohio St.3d 717, 560 N.E.2d 779. Because we have held that no such exception applies, we need not consider the applicability of additional defenses such as R.C. 2744.03(A)(5). Appellants' attempt to convert an argument against the validity of a particular defense into independent grounds for denying immunity is rejected.

## II

We hold that the erection and nonerection of high water signs is a government function such that appellees' actions came under the general immunity of R.C. 2744.02(A)(1), and that neither the nuisance exception of R.C. 2744.02(B)(3) nor the negligence exception for the performance of proprietary functions of R.C. 2744.02(B)(2) applies to exempt appellees from immunity. Accordingly, summary judgment was properly granted by the trial court, and the judgment is affirmed.

*Judgment affirmed.*

BROGAN, P.J., and FAIN, J., concur.