OPINION
{¶ 1} This case is before the Court on Plaintiffs-Appellants David and Penelope Jones' direct appeal from a trial court judgment granting summary judgment in favor of Defendant-Appellee City of Kettering.
 {¶ 2} David Jones suffers from spastic quadriplegic cerebral palsy, requiring him to use a motorized wheelchair to travel. In early September, 2002 Jones called the City of Kettering to advise them of the dangerous condition of a curb ramp at the corner of Wilmington Pike and Beaverton. Jones complained about the condition of the ramp again on October 17, 2002. The following day, the city sent construction inspector Thomas Calvert out to inspect the ramp. Calvert concluded that the ramp was in a "potentially dangerous" condition.
 {¶ 3} Just four days later, Jones was traveling through the same intersection. He claimed to have no other safe, alternative route. Jones explained that the ramp empties directly into the flow of traffic on Wilmington Pike, forcing him to make a sharp turn in order to get back into the crosswalk. Unfortunately, when Jones made the sharp turn, he fell from his wheelchair and broke his collar bone.
 {¶ 4} Jones and his wife filed a complaint against the city alleging negligence, nuisance, and loss of consortium. Jones blamed both the dangerous condition of the curb ramp and the ramp's design and construction for his fall. He also maintained that the ramp violates the Americans with Disabilities Act and that the City of Kettering failed to remedy the violations when they resurfaced the streets and repaired the sidewalks in question in 1999, subsequent to the enactment of the Act. The city filed a motion for summary judgment, to which the plaintiffs filed a memorandum in opposition. The city filed a reply. The trial court granted summary judgment in favor of the city based upon its claim of sovereign immunity. The plaintiffs filed a timely notice of appeal.
 {¶ 5} Appellants' first assignment of error:
 {¶ 6} "The trial court erred by granting summary judgment for defendant when defendant's motion for summary judgment failed to point to the record in support of its motion, and only pointed to the record in its reply to plaintiff's memorandum in opposition to summary judgment."
 {¶ 7} In their first assignment of error, Appellants contend that the trial court erred in granting summary judgment in favor of the city because the city failed to point to the parts of the record that support its motion for summary judgment. However, because the city did point to some of the supporting portions of the record in its motion and to other portions in its reply to the memorandum in opposition, we find that any error in not citing all portions of the record in its motion was harmless.
 {¶ 8} Pursuant to Civil Rule 56, "a party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of `the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, in any,' which it believes demonstrate the absence of a genuine issue of material fact." Dresher v.Burt (1996), 75 Ohio St.3d 280, 288, 662 N.E.2d 264, quoting CelotexCorp. v. Catrett (1986), 477 U.S. 317, 321-328. Moreover, it is well established that an appellate court reviews summary judgments de novo, independently and without deference to the trial court's determination.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588,641 N.E.2d 265.
 {¶ 9} A review of the city's motion for summary judgment reveals several references to the complaint and to David Jones' deposition. In the city's reply to the memorandum in opposition, there were also several references to Calvert's deposition and to Alan Kundtz's affidavit. Because we review this issue de novo, we are free to consider the defendant's references to the record both in their memorandum and in their reply. When the two documents are considered together, we conclude that the city did cite sufficient support from the record to support its request for summary judgment. Because we have necessarily independently reviewed the merits of the city's motion for summary judgment, as discussed in response to the second assignment of error, any error in failing to include all references in the original motion is harmless.
 {¶ 10} Appellants' first assignment of error is without merit and must be overruled.
 {¶ 11} Appellants' second assignment of error:
 {¶ 12} "The trial court erred by granting summary judgment for defendant because defendant is not immune from liability when a person that travels by means of a wheelchair suffers injuries that are caused by a curb ramp that violates the mandatory requirements of the law."
 {¶ 13} In their second assignment of error, Appellants argue that the city should not benefit from sovereign immunity, and therefore, the trial court erred in granting summary judgment in favor of the city. Alternatively, Appellants maintain that any immunity is destroyed by the city's non-compliance with the Americans with Disabilities Act. We disagree in both regards.
 {¶ 14} Summary judgment pursuant to Civ.R. 56 should be granted only if no genuine issue of material fact exists; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. When considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party. Id. Moreover, as noted above, an appellate court reviews summary judgments de novo, independently and without deference to the trial court's determination. Koos, supra, at 588.
 {¶ 15} A general grant of sovereign immunity was established in R.C. § 2744.02(A)(1), which provides that a political subdivision is not liable for damages for injury, death or loss that occurs in connection with the performance of a governmental or proprietary function of the political subdivision. The parties acknowledge that the term governmental function includes the maintenance and repair of public sidewalks. R.C. §2744.01(C)(2)(e). However, R.C. § 2744.02(B) creates exceptions to the general grant of immunity. Appellants argue that the city should be liable for injury caused by its failure to keep public sidewalks open, in repair, and free of nuisance. R.C. § 2744.02(B)(3).
 {¶ 16} To avoid summary judgment on a nuisance claim, Appellants had to establish that the condition alleged to constitute a nuisance created a danger to ordinary traffic on the regularly traveled part of the road or sidewalk and that the cause of the condition was other than a decision regarding design and construction. Haynes v. City of Franklin,95 Ohio St.3d 344, 2002-Ohio-2334, ¶ 18. Furthermore, Appellants were required to show that the city had actual or constructive knowledge of the alleged nuisance. Because it is undisputed that the curb ramp was in disrepair and the city knew of that condition, we necessarily turn to the cause of the condition, specifically, whether it was caused by design or construction, or whether it was caused by the city's lack of proper maintenance.
 {¶ 17} Appellants first argue that a nuisance existed because of the state of repair of the curb ramp. They stated in their memorandum in opposition to the city's motion for summary judgment that their "investigation has revealed that these defects could possibly be related to the normal wear and tear of concrete." However, they offered no evidence in support of that conclusion. In response to Jones' second call to the city about the condition of the ramp, the city promptly sent out construction inspector Thomas Calvert to inspect it. Just four days later, Jones had his accident.
 {¶ 18} Clearly, the city was in the process of evaluating the ramp in order to determine what repairs, if any, were necessary. A city's duty to keep its "public ways open, in repair, and free from nuisance, requires only reasonable care and diligence * * * and does not exact that which is unreasonable or impracticable." Taylor v. Cincinnati (1944),143 Ohio St. 426, 55 N.E.2d 724, paragraph 5 of the syllabus. A city cannot be expected to immediately make repairs to a single curb ramp; it takes time for decisions to be made and implemented. See, e.g., Garlandv. Ohio Dept. Of Transportation (1990), 48 Ohio St.3d 10, 548 N.E.2d 233
(Fourteen months not unreasonable time for State to implement plan to install traffic light). Accordingly, no genuine issue of material fact existed with regard to whether the state of repair of the ramp constituted a nuisance.
 {¶ 19} Alternatively, Appellants claim that a nuisance existed because of the design and construction of the ramp. Specifically, Appellants allege that the ramp was aimed the wrong way and that it "was of an improper width, had an improper transition, and insufficient clear space." Calvert explained in his deposition that the ramp was designed and built as it was based on concerns about the location of a nearby fire hydrant on the sidewalk. Just as in Haynes, supra, at ¶¶ 18-19, Appellants here failed to present any evidence to rebut the city's explanation for designing and constructing the ramp as it did. Thus, there is no genuine issue of material fact as to this issue. Accordingly, the blanket immunity of R.C. § 2744.02(A)(1) applies. Id., at ¶¶ 19-20. See, also,Franks v. Lopez (1994), 69 Ohio St.3d 345, 348-49, 632 N.E.2d 502.
 {¶ 20} Finally, Appellants maintain that the city had no discretion to act in a manner that was not in compliance with the Americans with Disabilities Act, and that because the ramp was not in compliance with the Act, sovereign immunity was destroyed. To the contrary, sovereign immunity is too strong a doctrine to be automatically eliminated by a single instance of a ramp variance. Furthermore, this Court has previously held that a governmental entity "need not have been acting in a discretionary manner in order to invoke the broad blanket immunity provided by R.C. 2744.02(A)(1)." Feitshans v. Darke County (1996),116 Ohio App.3d 14, 22, 686 N.E.2d 536. See, also, Saulsbury v. Cityof Columbus (March 9, 1999), Franklin App. No. 98AP-559, unreported (Violation of ODOT design standards did not change the fact that design defect, not maintenance created the condition).
 {¶ 21} We must, therefore, turn to Title II of the Americans with Disabilities Act of 1990, which provides that "[N]o qualified individual with a disability shall, by reason of such disability be excluded from participation or denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132. Narrowly applying the Act to the fundamental right of disabled people to have access to the court systems, the United States Supreme Court recently found the Act to be constitutional. Tennessee v. Lane (2004), 541 U.S. 509, 124 S.Ct. 1978.
 {¶ 22} A public entity's decisions about design and construction cannot evade operation of the Act simply because they are discretionary. Jones points to two federal cases in support of that proposition. AbilityCenter of Greater Toledo v. City of Sandusky (2001), 133 F.Supp.2d 259;Deck v. Toledo (1999), 76 F.Supp.2d 816. In accord with both of those cases, Jones would have been entitled to injunctive relief, had he sought it. See, e.g., Ability Center, supra, and Deck, supra. However, "compensatory and punitive damages are available only on a showing of intentional discrimination." Ability Center, supra, at 593, citingKolstad v. Am. Dental Ass'n (1999), 527 U.S. 526, 533-34, 119 S.Ct. 2118. In this case, there was no evidence of intentional discrimination by the City of Kettering. To the contrary, the evidence shows that the city promptly investigated Jones' complaint and was in the process of deciding how to proceed on that complaint when Jones had his accident.
 {¶ 23} For these reasons, Appellants' second assignment of error is overruled.
 {¶ 24} For the forgoing reasons, we find that the trial court properly granted summary judgment in favor of the City of Kettering. The judgment of the trial court will be Affirmed.
Brogan, P.J. and Donovan, J., concur.